Prudencio MENDEZ–APONTE,
et als., Plaintiffs,

v.

Commonwealth of PUERTO RICO,
et als., Defendants.

Civ. No. 06–1644 (PG).

United States District Court,
D. Puerto Rico.

Sept. 16, 2009.

Nicolas Nogueras–Cartagena, Patricia Ramirez–Gelpi, Nicolas Nogueras Law Offices, San Juan, PR, for Plaintiffs.

Idza Diaz–Rivera, Jose J. Gueits–Ortiz, P.R. Department of Justice—Federal Litigation, San Juan, PR, for Defendants.

## OPINION AND ORDER

JUAN M. PEREZ–GIMENEZ, District Judge.

Pending before the Court is defendant Fernando Bonilla's ("Bonilla" or "Defendant") motion for summary judgment (Docket No. 131). For the reasons set forth below, the Court **GRANTS** the Defendant's motion.

### I.  BACKGROUND

Plaintiff Prudencio Mendez–Aponte ("Mendez" or "Plaintiff"), his wife Maria de los Angeles Lopez and the Conjugal Partnership constituted between them (hereinafter collectively referred to as "Plaintiffs") filed the above-captioned claim on June 27, 2006 against several defendants.  After numerous procedural actions, including two motions to dismiss (Dockets No. 18, 20), the Court dismissed Plaintiff Mendez's claims pursuant to 42 U.S.C. §§ 1981, 1985, 1986; the Fifth Amendment claims as to all defendants; as well as all claims against the Commonwealth of Puerto Rico and against the individual defendants in their official capacity for monetary damages.  See Docket No. 50.  The Court also ordered Plaintiffs to file an amended complaint including only the two remaining claims, namely, the 42 U.S.C.A. § 1983 claims for First Amendment political discrimination and the Fourteenth Amendment due process claims against the individual defendants in their personal capacities.  See Docket No. 50.

On April 27, 2007, Plaintiffs filed an amended complaint naming Bonilla, former Secretary of State of the Commonwealth of Puerto Rico, as the only defendant.  See Docket No. 52.  The Plaintiffs allege that Mendez worked at the Puerto Rico State Department as Assistant Secretary of

State for Protocol Affairs, and that in 2005, Bonilla dismissed him from his employment because of his political affiliation in violation of his constitutional rights to freedom of speech. Mendez also avers that his employment was terminated without a formal hearing in violation of his due process rights. Plaintiffs also seek supplemental jurisdiction of their state law claims for damages under Article 1802 of the Civil Code of Puerto Rico, P.R. LAWS ANN. tit. 31, § 5141 (Puerto Rico's general tort statute). *See* Docket No. 52.

In the complaint, Plaintiff Mendez claims to be a "staunch" statehood supporter, a fact he alleges to be widely known by the staff of the Department of State, including the Defendant. Mendez also asserts that the position he occupied was a career position, that he was treated as such, and that, in any event, the position is not one for which political affiliation is a proper criteria. *See* Docket No. 52.

According to Mendez, in 2005, he proposed to the interim Secretary of State, Marisara Pont–Marchese, that Iraqi dinars could be a good long-term investment for Puerto Rico. Ponte–Marchese did not become Secretary of State; the position went instead to defendant Fernando Bonilla. On August 21, 2005, Mendez alleges a journalist from local newspaper *El Nuevo Día* called him to inquire about the sale of dinars *during office hours within the Department's facilities.* Plaintiff Mendez claims to have called Bonilla to inform him of the situation and made an appointment to meet with Defendant the following afternoon to discuss the matter. In the morning of August 22, 2005, Plaintiff contends that he learned that he had been discharged from his position. He also learned that the Secretary of State asked the Director of the Government Ethics office to conduct an investigation of the alleged sale of Iraqi dinars at the agency.

He was summoned later that day to appear before an investigator carrying out an administrative inquiry, who allegedly questioned him about the alleged sale of the dinars. Plaintiff avers that on August 24, 2005, he received a formal notification in writing, dated two days earlier, where he was informed that he had been removed from his job due to "illegal conduct." According to Mendez, the notification did not specify the type of conduct that led to his termination or its illegality.

After further proceedings, the Plaintiffs moved to voluntarily dismiss Mendez's due process claim (Docket No. 108), a request that was granted by this Court (Docket No. 109). Thereafter, the Defendant filed a motion for summary judgment requesting the dismissal of the remaining federal claim: plaintiff Mendez's Section 1983 political discrimination claim (Dockets No. 131–132), and the Plaintiffs timely opposed (Dockets No. 145–146).

## II. FACTUAL FINDINGS

Before setting forth the facts found by this Court to be undisputed and relevant to the matter at hand, we must first address why this Court's findings of fact are culled from Defendant's Statement of Uncontested Facts (Docket No. 132).

Local Rule 56(c) states that a non-movant's opposing statement of material facts shall admit, deny or qualify the facts submitted by the movant, and in so doing, "shall support each denial or qualification by a record citation as required by this rule." Local Rule 56(c). "The purpose of this rule is to relieve the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute." *CMI Capital Market Investment, LLC v. Gonzalez–Toro,* 520 F.3d 58, 62 (1st Cir.2008). When a party makes numerous conclusory allegations and assertions of fact for which

they offer no support, a district court is not required to ferret through sloppy records in search of evidence supporting the party's case. *See Mercado–Alicea v. P.R. Tourism Co.*, 396 F.3d 46, 51 (1st Cir.2005) (internal citations omitted). "Where the party opposing summary judgment fails to comply, the rule permits the district court to treat the moving party's statement of facts as uncontested...." *Alsina–Ortiz v. Laboy*, 400 F.3d 77, 80 (1st Cir.2005) (internal citations omitted).

In addition, it is widely known that "[t]he moving party, along with its statement of uncontested facts, has the initial burden of pointing out the absence of evidence and the non-moving party, along with its statement of contested facts, has the **ultimate burden** of setting forth the specific facts that create a genuine issue for trial." *Dominguez v. Eli Lilly and Co.*, 958 F.Supp. 721, 727 (D.P.R.1997) (emphasis ours). "Once the non-movant comes forward with more than a scintilla of evidence, the Court construes the material facts and reasonable inferences drawn therefrom in favor of the non-moving party." *Id.*

Now, while it is true that, in the summary judgment context, a district court must draw all reasonable inferences in favor of the non-moving party, we are "not obliged to accept as true or to deem as a disputed material fact, each and every unsupported, subjective, conclusory, or imaginative statement made to the Court by a party." *Torrech–Hernandez v. General Elec. Co.*, 519 F.3d 41, 47 (1st Cir.2008). This is particularly true where a plaintiff attempts to object to a motion for summary judgment by submitting an affidavit in which he/she asserts what amounts to nothing more than self-serving, factually-devoid declarations. *See id.*

After a close perscrutation of Plaintiffs' opposing statement of material facts

(Docket No. 146), we find that Plaintiffs' denials and qualifications of Defendant's fact statements are mostly irrelevant to the matter at hand and consist of mere "speculation, generalities, conclusory assertions, improbable inferences, and, for lack of a better phrase, a lot of 'hot air.' " *Eli Lilly and Co.*, 958 F.Supp. at 728. Plaintiffs' contentions and "qualifications" are basically a series of *non sequiturs* that are either unsupported by record citations or grounded on an affidavit submitted by plaintiff Mendez, which mostly contains self-serving and conclusory assertions of law as opposed to fact.

Inasmuch as Plaintiffs failed to properly dispute the facts set forth by the Defendant, the factual findings numbered below stem from the latter's Statement of Uncontested Material Facts (Docket No. 132), unless otherwise stated.

The following relevant facts are undisputed:

1. At all times relevant herein, Plaintiff held the position of Assistant Secretary of State for Protocol Affairs. *See* Docket No. 132 at ¶ 1.

2. The position of Assistant Secretary of State for Protocol Affairs responds directly to the Secretary of State and the Sub-Secretary. *See* Docket No. 132 at ¶ 12.

3. The position of Assistant Secretary of State for Protocol Affairs is classified as a trust position. *See* Docket No. 132 at ¶ 17.

4. As per the duty sheet signed by Plaintiff on May 27, 2004, the Assistant Secretary of State for Protocol Affairs could use his own criteria and was subject to superficial review. *See* Docket No. 132 at ¶ 8.

5. As of November 5, 2004, Plaintiff received a monthly salary of $6,418.00. *See* Docket No. 132 at ¶ 9.

6. As Assistant Secretary of State for Protocol affairs, Plaintiff was responsible

of directing, supervising, planning and coordinating the operational functioning and monitoring of all the divisions comprising the Office of the Assistant Secretary of Protocol Affairs; such as Translations, Proclaims and Cultural Promotions and the Office of Protocol Affairs. *See* Docket No. 132 at ¶ 2.

7. As Assistant Secretary of State for Protocol Affairs, Plaintiff had the duty to advise the Secretary of State in the formulation of public policy that will rule his work area and the management staff of the Department as well as the representatives of public and private organizations regarding the mission and objective of the different activities and services provided. *See* Docket No. 132 at ¶ 3.

8. The Assistant Secretary of State for Protocol Affairs also had the following duties and responsibilities: (1) represent and/or accompany the Secretary of State or the Governor and the Sub–Secretary in official acts, as required; (2) plan, develop, supervise and execute the visits of high ranking dignitaries of different governments entrusted by the Secretary of State and the Governor of Puerto Rico; (3) advise the Secretary of State and the Governor of the Commonwealth of Puerto Rico in local, military, civil and International Protocol affairs; (4) coordinate the advanced guard of the official travels of the Sub–Secretary, the Secretary of State and the Governor of the Commonwealth of Puerto Rico, as required. *See* Docket No. 132 at ¶¶ 4–7.

9. The duty sheet for the position of Assistant Secretary of State for Protocol Affairs, signed by the Plaintiff, clearly establishes that this position is a supervisory one. The Assistant Secretary of State for Protocol Affairs position had four (4) employees under its direct supervision, namely, two (2) Executive Officials, one (1) Director of Protocol and one (1) Director of Translations and Proclamations. *See* Docket No. 132 at ¶ 10.

10. In the evening hours of August 21, 2005, the Plaintiff called the Defendant to inform him that a news reporter was calling Plaintiff requesting his reaction regarding information that Iraqi dinars were being sold at the Department of State during working hours by Department employees, and that it involved the Plaintiff and his son. The Defendant told the Plaintiff to call his press officer, Sandra Pomales, to inform her of the situation. Defendant also told Plaintiff they would meet the following day to discuss the matter. *See* Docket No. 132 at ¶ 13.

11. On August 22, 2005, a news report was published about the Iraqi dinars sale scheme by several Department of State employees who were collaborating with the Plaintiff's son and that it involved the Plaintiff also. *See* Docket No. 132 at ¶ 14.

12. The Defendant requested the Sub–Secretary of State, attorney Winda Torres, to start an investigation of the matter in order to take the appropriate disciplinary measures. She initiated an investigation with the chief of auditing and the director of legal affairs of the Department. They made several preliminary findings pursuant to the evidence found, and recommended that disciplinary measures be taken against career employees Lourdes Hernández and Frederick Kurr. The Defendant, then, decided to suspend both Frederick Kurr and Lourdes Hernández from work but not from pay. *See* Docket No. 132 at ¶ 15.

13. The news report was specific regarding the scheme of the sale of the Iraqi dinars at the Department of State by employees during working hours, specifically Lourdes Hernández and Frederick Kurr. Both of them worked directly under the Plaintiff's supervision in the two positions

of higher hierarchy under the Plaintiff. The news report included copy of the sale receipts, and the information gathered in the investigation revealed that such sales were promoted by the Plaintiff and were for the benefit of his son. According to Bonilla, despite the fact that Plaintiff called him to inform him of the news report, he became aware of the entire story on the next day, when the Defendant found out most of the information that was later gathered and validated in the investigation that ended in disciplinary measures against Frederick Kurr and Lourdes Hernández. *See* Docket No. 132 at ¶ 19.

14. After the disciplinary proceedings established by the Department of State regulations took place, Frederick Kurr was suspended for 15 days and Lourdes Hernandez was suspended for 30 days from work and pay. *See* Docket No. 132 at ¶ 16.

15. On August 22, 2005, the Defendant decided to suspend Plaintiff from work and pay until further determinations based on the already ongoing investigation could be made. *See* Docket No. 132 at ¶ 20.

16. On March 3, 2006, the Defendant separated the Plaintiff from his position of Assistant Secretary of State for Protocol Affairs because, according to Bonilla, he had lost all trust in him. *See* Docket No. 132 at ¶ 18.

17. According to Bonilla, it was his opinion that the Plaintiff was member of the Popular Democratic Party since he had previously held the position of Assistant Secretary of State for Protocol Affairs, or a similar position, under the administration of Rafael Hernández Colón and Sila María Calderón [both former Governors affiliated with the PPD]. *See* Docket No. 132 at ¶ 21.

## III. SUMMARY JUDGMENT STANDARD

A motion for summary judgment is governed by Rule 56(c) of the Federal Rules of Civil Procedure, which allows disposition of a case if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Sands v. Ridefilm Corp.*, 212 F.3d 657, 660 (1st Cir.2000). A factual dispute is "genuine" if it could be resolved in favor of either party, and "material" if it potentially affects the outcome of the case. *See Calero–Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir.2004).

To be successful in its attempt, the moving party must demonstrate the absence of a genuine issue as to any outcome-determinative fact in the record, *see DeNovellis v. Shalala*, 124 F.3d 298, 306 (1st Cir.1997), through definite and competent evidence. *See Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d 576, 581 (1st Cir.1994). Once the movant has averred that there is an absence of evidence to support the non-moving party's case, the burden shifts to the non-movant to establish the existence of at least one fact in issue that is both genuine and material. *See Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir.1990) (citations omitted). If the non-movant generates uncertainty as to the true state of any material fact, the movant's efforts should be deemed unavailing. *See Suarez v. Pueblo Int'l*, 229 F.3d 49, 53 (1st Cir. 2000). Nonetheless, the mere existence of "some alleged factual dispute between the parties will not affect an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, "summary judgment may be appropriate if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Mu-*

noz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir.1990).

At the summary judgment juncture, the Court must examine the facts in the light most favorable to the non-movant, indulging that party with all possible inferences to be derived from the facts. *See Rochester Ford Sales, Inc. v. Ford Motor Co.,* 287 F.3d 32, 38 (1st Cir.2002). The Court must review the record "taken as a whole," and "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 135, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). This is so, because credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. *Id.*

## IV. DISCUSSION

### A. Section 1983 Political Discrimination

Section 1983 "provides a remedy for deprivations of rights secured by the Constitution and laws of the United States when that deprivation takes place under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." *Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 924, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982) (internal quotation marks omitted). Plaintiff Mendez brings suit for the violation of his constitutional rights under the First Amendment, which "insulates public employees who hold nonpolicymaking positions from the vicissitudes of personnel decisions rooted in partisan political concerns." *Bergeron v. Cabral,* 560 F.3d 1, 7 (1st Cir.2009) (*citing Rutan v. Repub. Party of Ill.,* 497 U.S. 62, 74–76, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990)). *See also Padilla–García v. Guillermo Rodríguez,* 212 F.3d 69, 74 (1st Cir.2000). "A plaintiff bringing a political discrimination claim under the First Amendment bears the burden of producing sufficient evidence from which a jury may infer that plaintiff's constitutionally protected conduct was a substantial or motivating factor behind the adverse employment action." *Torres–Rivera v. Puerto Rico Elec. Power Authority,* 598 F.Supp.2d 250, 255–256 (D.P.R.2009) (*citing Maymi v. Puerto Rico Ports Authority,* 515 F.3d 20, 28 (1st Cir.2008)).

▇▇▇ To establish a *prima facie* case of political discrimination, a claimant must show that: "(1) the plaintiff and the defendant belong to opposing political affiliations; (2) the defendant has knowledge of the plaintiff's affiliation; (3) a challenged employment action occurred; and (4) political affiliation was a substantial or motivating factor behind it." *Martinez–Vélez v. Rey–Hernandez,* 506 F.3d 32, 39 (1st Cir. 2007) (internal citations and quotation marks omitted). Although discharge is the paradigmatic example of an adverse employment action, acts short of outright dismissal may be sufficiently adverse to undergird claims for political retaliation. *See Bergeron,* 560 F.3d at 8 (internal citations omitted). "An adverse employment action includes not only a discharge or a demotion, but also a government entity's refusal to promote, transfer, recall after a layoff, or even hire an employee." *Torres–Rivera,* 598 F.Supp.2d at 256 (internal citations omitted).

▇▇▇ Once the plaintiff overcomes the hurdle of establishing a prima facie case of discrimination, "the burden then shifts to the defendants to demonstrate that they would have taken the same action for constitutional reasons." *Maymi,* 515 F.3d at 25 (1st Cir.2008) (*citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 286–87, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). "In a political discrimination case, the defendant bears the burden of persuading the factfinder that its reason is

credible." *Welch v. Ciampa,* 542 F.3d 927, 941 (1st Cir.2008).

Summary judgment is warranted "only if defendants' evidentiary proffer *compelled* the finding that political discrimination did not constitute a "but for" cause for the [adverse employment action]." *Jirau–Bernal v. Agrait,* 37 F.3d 1, 4 (1st Cir. 1994) (internal citations omitted). In response, "the plaintiff may discredit the proffered nondiscriminatory reason, either circumstantially or directly, by adducing evidence that discrimination was more likely than not a motivating factor." *Padilla–Garcia v. Guillermo Rodriguez,* 212 F.3d 69, 77 (1st Cir.2000) (internal citations omitted).

This burden-shifting mechanism is significantly different from the device used in other employment discrimination contexts, such as Title VII cases, where the plaintiff retains the burden of persuasion at all times. *See id.* at 77–78. In contrast, under the *Mt. Healthy* analysis for political discrimination, the burden of persuasion passes to the defendant-employer once the plaintiff produces sufficient evidence of his/ her prima facie case. *Id.* at 78 n. 8.

In the instant case, Plaintiff claims that Defendant, acting under color of state law, violated his First Amendment rights by discharging him from his position of Assistant Secretary of State for Protocol Affairs because of his political beliefs. In his motion for summary judgment, the Defendant argues that plaintiff Mendez's political discrimination claim should be dismissed and judgment should be entered in his favor inasmuch as Plaintiff held a trust position for which party affiliation constituted an appropriate qualification for continued employment, and thus, his position was terminable without cause.

As previously stated, "a government employer cannot discharge public employees merely because they are not sponsored by or affiliated with a particular political party." *Galloza v. Foy,* 389 F.3d 26, 28 (1st Cir.2004) (*citing Elrod v. Burns,* 427 U.S. 347, 350, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976)). Notwithstanding, "[l]ike most general rules, this rule admits of certain well-defined exceptions. One such exception is reserved for instances in which political affiliation is an appropriate requirement for the effective performance of the public office involved." *Galloza,* 389 F.3d at 28 (*citing Branti v. Finkel,* 445 U.S. 507, 518, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980)). "This rule ensures that representative government will not be undercut by tactics obstructing the implementation of policies of the new administration, policies presumably sanctioned by the electorate." *Ruiz–Casillas v. Camacho–Morales,* 415 F.3d 127, 132 (1st Cir.2005) (*citing Elrod,* 427 U.S. at 367, 96 S.Ct. 2673).

■ The First Circuit has established a two-step analysis designed to aid the court in determining whether political affiliation is an appropriate requirement for the effective performance of the public office involved. First, the court must determine "whether the governmental unit [employing the plaintiff] decides issues where there is room for political disagreement on goals or their implementation." *Ruiz–Casillas,* 415 F.3d at 132. Second, the court must inquire whether the position's responsibilities "resemble those of a policymaker, a privy to confidential information, a communicator, or some other office holder whose function is such that party affiliation is an equally appropriate requirement." *Id.* (*citing Jimenez Fuentes v. Torres Gaztambide,* 807 F.2d 236, 241–42 (1st Cir.1986)). "Although obviously fact-intensive, the ultimate determination whether a government position is "political" presents a question of law for the court, rather than an issue of fact for jury resolution." *Ortiz–Pinero v. Rivera–Ar-*

*royo,* 84 F.3d 7, 12 (1st Cir.1996) (internal citations omitted).

"The first prong ... necessitates a high-level glimpse of the purpose of the employing agency and the role that the particular position occupies within it." *Galloza,* 389 F.3d at 29. In the case at hand, the position held by Mendez was within the Department of State and reported directly to the Secretary of State. The Secretary of this Department is entrusted with the responsibility of promulgating all proclamations and orders of the Governor and all laws enacted by the Legislative Assembly, and is empowered to employ all necessary deputies and assistants for the proper discharge of his duties. *See* P.R. LAWS ANN. tit. 3, §§ 51, 60. As per the findings of fact, Plaintiff was among these assistants.

In their opposition, Plaintiffs argue that the Department of State has no important functions and cannot make any public policy whatsoever because it has to follow the policy established by the United States. *See* Docket No. 145 at page 5. In reaching this conclusion, the Plaintiffs' attorney used more than five pages to discuss the historical relation between the United States and Puerto Rico, starting with the Spanish–American War, moving on to the Treaty of Paris, the Foraker Act, the Jones Act, and so forth. First of all, the undersigned, after being on the bench for almost thirty years, is well-aware of Puerto Rico's legislative history. Second, the discussion, as argued by the Plaintiffs' attorneys, has absolutely no bearing in this case or before this Court—as shall be discussed in more detail later on in this Order.

Needless to say, we disagree with the Plaintiffs. It is difficult to imagine a more politically sensitive department or position within it in light of the statutorily set goals and duties of the Secretary of State, and its closeness to the office of the Governor.

Moreover, the First Circuit Court of Appeals has held in numerous instances that the removal of employees in policymaking positions within other similar departments and agencies of the local government does not violate the First Amendment. *See, e.g., Maymi,* 515 F.3d 20 (1st Cir.2008) (holding employee's job as an auxiliary executive director in Puerto Rico Ports Authority was trust position); *Valdizan v. Rivera–Hernandez,* 445 F.3d 63 (1st Cir. 2006) (Executive II employee in Puerto Rico Department of Labor held a policymaking position for which political affiliation was an appropriate qualification for continued employment); *Ruiz–Casillas,* 415 F.3d 127 (1st Cir.2005) (for purposes of First Amendment political discrimination claim, responsibilities of Administrative Director of Federal Programs Division of Puerto Rico municipality resembled those of policymaker); *Galloza,* 389 F.3d 26 (1st Cir.2004) (politically motivated discharges of appointed officeholders from positions as regional administrators with Puerto Rico Municipal Revenues Collection Center (CRIM) did not violate First Amendment).

■ Therefore, by virtue of transitivity, this Court hereby holds that the Department of State is an agency that handles matters potentially subject to partisan political differences, and Plaintiff's role within it potentially involved government decisionmaking on issues where there is room for political disagreement on goals or their implementation. The first prong of the policymaker analysis is thus satisfied.

In determining the second prong, the court must "examine the position's "inherent attributes," for which the job description is the most useful starting point." *Ruiz–Casillas,* 415 F.3d at 132 (*citing Galloza,* 389 F.3d at 31). "Among [other] indicia material to the second element are relative pay, technical competence, power

to control others, authority to speak in the name of policymakers, public perception, influence on programs, contact with elected officials, and responsiveness to partisan politics and political leaders." *Uphoff–Figueroa v. Puerto Rico Elec. Power Authority*, No. Civ. 03–1509(PG), 2005 WL 3095517, at \*7 (D.P.R. November 18, 2005) (*citing Ortiz–Pinero*, 84 F.3d at 12). Finally, pursuant to the applicable caselaw, the classification of a position as "career" or "trust" under Puerto Rico law is relevant, although not dispositive. *See Lopez–Quinones v. Puerto Rico Nat. Guard*, 526 F.3d 23, 26 (1st Cir.2008) (internal citations omitted).

Defendant argues that the functions of the Assistant Secretary of State for Protocol Affairs position are such that party affiliation is an appropriate requirement, and thus, the Defendant was free to remove the Plaintiff from the position. The Defendant also contends that, at any rate, Plaintiff's removal was justified and unrelated to his political affiliation. To the contrary, the Plaintiff contends that although he held a high-ranking position, it was not a policy-making position. Mendez states that his position was not politically sensitive but of a technical and administrative nature, and that contrary to his replacement, he had the knowledge, skills and experience to perform the duties of the position. He avers that the only reason he did not remain in the position was because of his political affiliation, which was not an appropriate requirement.

In making the determination of whether the relevant position "resembles that of a policymaker, whose functions are such that party affiliation is a concinnous criterion for selection and/or retention ... what counts are the attributes inherent in the position—its duties and powers—as opposed to the work actually performed by a quondam holder of that position." *Gallo-*za, 389 F.3d at 31 (*citing Jimenez Fuentes v. Torres Gaztambide*, 807 F.2d 236, 242 (1st Cir.1986)). "As indicated above, a perusal of the job description for the position is the most useful starting point for determining the position's inherent attributes." *Galloza*, 389 F.3d at 31 (internal citations omitted).

Defendant has proffered the official job description for the Assistant Secretary of State for Protocol Affairs position, which is signed by the Plaintiff. *See* Docket No. 137–2. According to the job description, the position is classified as a "trust and confidence" position, a factor that, though not dispositive, is persuasive. The listed responsibilities of the position include, among other things:

1. direct, supervise, plan and coordinate the operational functioning and monitoring of all the divisions comprising the Office of the Assistant Secretary of Protocol Affairs; such as Translations, Proclaims and Cultural Promotions and the Office of Protocol Affairs;

2. advise the Secretary of State in the formulation of public policy that will rule his work area and the management staff of the Department as well as the representatives of public and private organizations regarding the mission and objective of the different activities and services provided;

2. represent and/or accompany the Secretary of State or the Governor and the Sub–Secretary in official acts, as required;

3. plan, develop, supervise and execute the visits of high ranking dignitaries of different governments entrusted by the Secretary of State and the Governor of Puerto Rico;

4. advise the Secretary of State and the Governor of the Commonwealth of Puerto Rico in local, military, civil and International Protocol affairs;

5. coordinate the advanced guard of the official travels of the Sub–Secretary, the Secretary of State and the Governor of the Commonwealth of Puerto Rico, as required.

*See* Facts No. 6–8.

As is evident, some of the attributes inherent to the position of Assistant Secretary of State for Protocol Affairs was the participation in the formulation of the public policy that would govern the Office of Protocol Affairs inasmuch as he advised the Secretary of State as to such matters. "[I]t is enough that the official be involved in policy, even if only as an adviser, implementer, or spokesperson." *Olmeda v. Ortiz–Quinonez,* 434 F.3d 62, 67 (1st Cir. 2006) (*citing Flynn v. City of Boston,* 140 F.3d 42, 46 (1st Cir.1998)). In addition, Mendez had broad discretion in the direction of the Office of Protocol Affairs and supervision of the employees thereof. It can also be derived from the job description that he operated as a spokesperson or otherwise liaised with the public, other government agencies and foreign government officials.

Another important characteristic of trust positions is the power to control others. Here, whoever held the position of Assistant Secretary of State for Protocol Affairs supervised four (4) mid- or upper-level officials: two (2) Executive Officials, one (1) Director of Protocol and one (1) Director of Translations and Proclamations. *See* Fact No. 9. In addition, Mendez reported directly to a political appointee, namely, the Secretary of State. *See* Fact No. 2.

It also stems from the description that the appointed Assistant Secretary of State for Protocol Affairs may use his/her own criteria and is subject to superficial review of his/her functions. *See* Fact No. 4. According to the relevant caselaw, job descriptions that allow for the latitude to

exercise discretionary judgment tend to indicate that a position is policymaking in nature. *See Galloza,* 389 F.3d at 31.

Another factor to consider in the second prong analysis is the employee's relative pay. It its uncontested that Plaintiff received a monthly salary of $6,418.00, which amounts to a yearly salary of approximately $77,000. *See* Fact No. 5. This is certainly not the salary of the average career employee, particularly considering that the First Circuit Court of Appeals has held that an employee that makes a yearly salary of $30,000 is fairly "well-paid," a fact that may have led his superiors to believe that he was a trust employee. *See Lopez–Quinones,* 526 F.3d at 28.

In his response, the Plaintiff does not deny performing any of the functions listed in his job description. Instead, Plaintiff merely attempts to downplay their importance with hollow, conclusory statements that lacked any evidentiary support. Even analyzing the facts in the light most favorable to Plaintiff, this Court can only conclude that he failed to meet his burden to establish the existence of at least one fact in issue that is both genuine and material so as to prevent the entry of summary judgment against him. *See Garside,* 895 F.2d at 48.

In conclusion, the official job description of the Department of State's Assistant Secretary of State for Protocol Affairs indubitably implicates policy and supports a finding that the position is a "trust" position for which political affiliation is a proper requirement. The degree to which the position confers authority to the Assistant Secretary to represent the Department of State's higher-ups (including the Governor), who themselves are policymakers; the influence of the position over programs and services provided; as well as the public

perception of what the position entails, clearly indicate that the position is a "trust" position. Accordingly, because we find that political affiliation is a proper qualification for the position at issue, Plaintiff's political discrimination claim must be dismissed.

## B. Puerto Rico Claims

The remainder of Plaintiffs' claims are grounded on Puerto Rico law. "A district court retains the discretion, however, to decline to exercise supplemental jurisdiction where the district court has dismissed all claims over which it had original jurisdiction." *Marrero–Gutierrez v. Molina,* 491 F.3d 1, 7 (1st Cir.2007) (*citing* 28 U.S.C. § 1367(c)(3); *Rodriguez v. Doral Mortgage Corp.,* 57 F.3d 1168, 1177 (1st Cir.1995)). Having dismissed all federal law claims, we will not exercise supplemental jurisdiction over the state law claims. Therefore, Plaintiffs' claims arising from Puerto Rico law are hereby **DISMISSED WITHOUT PREJUDICE.**

## C. Rule 11 Sanctions

The Court, under certain conditions, may impose an appropriate sanction upon the attorney, law firm, or party that has violated subdivision (b) of Federal Rule of Civil Procedure 11. Federal Rule of Civil Procedure 11(b) specifically states:

> By presenting to the court … a pleading, written motion, or other paper, an attorney … is certifying that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances, [that]—
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by ex-

isting law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; . . . .

FED.R.CIV.P. 11(b).

"Rule 11(b) proscribes not only written arguments made with any improper purpose, but also advancing frivolous arguments, as well as the assertion of factual allegations without evidentiary support or the likely prospect of such support." *Citibank Global Markets, Inc. v. Rodriguez Santana,* 573 F.3d 17, 32 (1st Cir.2009) (internal citations and quotation marks omitted).

The First Circuit Court of Appeals has held that Rule 11(b) is not a strict liability provision and a showing of at least culpable carelessness is required before a violation of the Rule can be found. *See Citibank Global Markets, Inc.,* 573 F.3d at 32 (internal citations omitted). The First Circuit has also been "careful to make clear that the mere fact that a claim ultimately proves unavailing, without more, cannot support the imposition or Rule 11 sanctions." *Id.*

After the required review of the materials filed in support of and against summary disposition, the Court cannot bypass the several deficiencies of the opposition filed by attorneys Nicolas Nogueras–Cartagena and Patricia Ramirez–Gelpi on behalf of Plaintiffs. With regards to form, the opposition filed by these attorneys had nor head nor tail. With regards to the substance of the legal arguments, the Court could not find any.

The Court first notes that the document is, for the most part, incomprehensible. The brief filed by Nogueras and Ramirez contains a series of rambling and disjointed arguments, that are largely irrelevant to the central issue at hand. For example, as previously mentioned, Plaintiffs' attorneys wasted at least seven (7) valuable pages—of what can be a 25-page document at the most—discussing the historical configuration of the local government's Department of State and its practical "irrelevance" (in the perspective of Plaintiffs' attorneys, of course).

The following are excerpts from the opposition that evince the aforementioned observations:

There is no mention of the position of Secretary of State, because their colonialist structure and organization, *like the Puerto Rico of today* did not need one nor gave our government the power to exercise its functions. (Page 2)

Again, there was no need for Congress to create the office of Secretary of State, being Puerto Rico a territory belonging to the United States. (Page 3)

During the debates of the Constitutional Convention, the 26th day of Session on December 5, 1951, delegate Alemañy, asked delegate Morales Otero what was the study that had been made so that the Department of State be created, Diary Constitution Convention, P. 696. Delegate Morales answered: "The Department of State would come to be, in a certain way equivalent to the Executive Secretary." (Page 4)

The Constitutional Convention was controlled by majority of the Popular Democratic Party, or was the Legislature of Puerto Rico. By creating the office of Secretary of State appointed by the Governor with the advice and consent of both chambers, of the Legislative, the political majority there was no need to

create the office of the Vice–Governor, which in *political practice meant the control of that position by the President of the PPD, who would become Governor of Puerto Rico*. Constitutional Convention Diary, P. 231–232. (Page 4)

The Treaty of Paris, signed on December 10, 1898 has clear and precise language to the effect that the civil rights and political status of the inhabitants of Puerto Rico "shall be determined by the Congress". *No charge has occurred since then as to where lies the absolute power*, especially in certain areas, in the relations of the United States and its territorial property, Puerto Rico. Therefore, a Department of State as known in regard to sovereign [sic] states or republics, was at no time established as part of the puertorrican [sic] government. (Page 5)

... the Department of State has no important functions and cannot make any policy whatsoever. It has to follow the policy established by the United States. (Page 5)

Puerto Rico is a territory of the United States of America. As such, it does not have the sovereign prerogative of a foreign state. *Therefore, the policy-making prerogatives of the Department of State are basically limited and controlled by the federal Department of State which is the entity which dictates foreign public policy for all states and territories which are part of the United States.* (Page 16)

*See* Docket No. 145 (emphasis ours).

Not only did the attorneys' arguments completely miss the mark in terms of legal merit, but are also filled with political innuendos and partisan undertones that have no place in this Court.

The Court also takes offense with the sloppiness and carelessness shown by

Plaintiffs' attorneys in the opposition filed. First of all, as explained in Section II of this Opinion and Order, Plaintiffs' attorneys failed to properly dispute the facts set forth by the Defendant in accordance with the Federal Rules of Civil Procedure and the applicable caselaw. This resulted in the Court cull the facts from Defendant's statements of material uncontested facts while disregarding Plaintiffs'. Second, the citations to the record in the memorandum of law left much to be desired inasmuch as Plaintiffs' attorneys failed to specify the documents in the record that supported their contentions. Plaintiffs' attorneys simply left blank what was supposed to indicate the number of the relevant exhibit they were referring to, which forces the Court to ferret through the record. For example:

> So much so that Plaintiff, along with his staff, was commonly referred to as the New Progressive Party group, the "PNP clan". [**Exhibit, ___** Sworn Statement]. Pursuant to the letter dated August 22, 2005, Plaintiff was notified that he held a trust position and as such was being suspended from work and pay; however, the reasons given in said letter for his separation from employment correspond to those of a career employee and not those of a confidential employee. [**Exhibit ___**, letter dated August 22, 2005] (Page 17)

> The Administrative Order does not set forth suspension of employment and salary as one of the disciplinary measures to be taken with regards to a trust employee. [**Exhibit, ___** Administrative Order 03–95] (Page 18)

*See* Docket No. 145 (emphasis ours). The Court is appalled at the attorneys' oversights, to say the least.

■ Plaintiffs' long and generally incomprehensible opposition is frivolous and totally devoid of any semblance of color-able merit. "Deciphering motions like the one presented here wastes valuable chamber staff time...." *In re King*, No. 05–56485, 2006 WL 581256 (Bkrtcy.W.D.Tex. February 21, 2006). Moreover, the arguments raised in favor of Plaintiffs lacked any legal basis, thus, failing to advance Nogueras and Ramirez's clients' interests or bring them closer to their ultimate goal. Finally, the careless omissions in the citations to the record can only be deemed as culpable negligence on the part of the attorneys, as opposed to inadvertence, when considering the combined deficiencies of the opposition. The Court finds this kind of conduct should not be tolerated from practicing attorneys. Sanctions are thus appropriate and necessary to protect the parties, the public and the judicial process. A reasonable monetary penalty paid to the Court will sufficiently deter the repetition of such conduct, both by Nogueras and Ramirez, and other litigants as well.

Having fully considered all relevant factors, the Court now sanctions attorney Nogueras and attorney Ramirez in the amount of One Thousand Dollars ($1,000.00) each, to be paid to the Court within thirty (30) days of the date of this Order unless Plaintiffs' counsel can show cause to the Court in writing, on or before September 30, 2009, why such sanctions are not warranted and appropriate. *See* FED.R.CIV.P. 11(c)(1).

## V. CONCLUSION

For the reasons stated above, this Court hereby **GRANTS** Defendant's motion for summary judgment (Docket No. 131–132). Accordingly, Plaintiff's Section 1983 political discrimination claim is hereby **DISMISSED WITH PREJUDICE**. Having declined to accept supplemental jurisdiction over Plaintiffs' claims under Puerto Rico law, the Court hereby **DISMISSES WITHOUT PREJUDICE** Plaintiffs' sup-

plemental claims. Judgment shall be entered accordingly.

In addition, the Court hereby **SANCTIONS** attorneys Nogueras and Ramirez pursuant to Rule 11 and **DIRECTS** each to pay a **$1,000.00** penalty to the Court, unless they can **SHOW CAUSE** by **September 30, 2009** why such sanctions are not warranted and appropriate. Payment is due **thirty (30) days** from the entry of this Order. The full amount is payable to Clerk, U.S. District Court.

**IT IS SO ORDERED.**