# United States Court of Appeals
## For the First Circuit

No. 09-2534

PRUDENCIO MÉNDEZ-APONTE; MARÍA DE LOS ANGELES LÓPEZ-DE MÉNDEZ;
CONJUGAL PARTNERSHIP MÉNDEZ-LÓPEZ,

Plaintiffs, Appellants,

v.

FERNANDO BONILLA, in his official and personal capacities
as Secretary of State; JANE DOE I, as wife of
Fernando Bonilla; CONJUGAL PARTNERSHIP BONILLA-DOE,

Defendants, Appellees,

COMMONWEALTH OF PUERTO RICO, represented by the Secretary of
Justice Hon. Roberto Sánchez-Ramos; STATE DEPARTMENT OF
PUERTO RICO, et al.,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Siler,[*] Circuit Judges.

Nicolás Nogueras-Cartagena, María Teresa Figueroa-Colón, and
Nicolás Nogueras Jr. Law Offices, on brief for appellants.
Irene S. Soroeta-Kodesh, Solicitor General, Leticia M.
Casalduc-Rabell, Deputy Solicitor General, Zaira Z. Girón-Anadón,
Deputy Solicitor General, and Rosa Elena Pérez-Agosto, Assistant
Solicitor General, on brief for appellees.

---

[*] Of the Sixth Circuit, sitting by designation.

July 8, 2011

**TORRUELLA**, <u>Circuit Judge</u>.  Prudencio Méndez-Aponte, the former Assistant Secretary of State for Protocol Affairs at the Puerto Rico State Department, sued Fernando Bonilla, in his personal and official capacity as the Secretary of State of the Puerto Rico State Department, alleging that Bonilla fired him due to his political affiliation.  Méndez-Aponte's claim did not survive Bonilla's motion for summary judgment.  The district court sanctioned Méndez-Aponte's attorneys $1000 each because it concluded that the pleadings and responses that they submitted violated Federal Rule of Civil Procedure 11(b).  Méndez-Aponte and his attorneys now appeal alleging that the district court erred in granting Bonilla's summary judgment motion and imposing sanctions. We affirm the district court's decision.

## I.  Background

Méndez-Aponte was the Assistant Secretary of State for Protocol Affairs at the Puerto Rico State Department from June 1, 2001 until March 3, 2006.  Méndez-Aponte alleges that, in 2005, in the course of his official duties and during "official meetings where the economic situation of the government of Puerto Rico and of the [Puerto Rico] State Department . . . were discussed," he suggested to Marisara Pont-Marchese, the interim Puerto Rico Secretary of State, that investing in Iraqi dinars would be a good long-term investment for Puerto Rico.

Méndez-Aponte alleges that on August 21, 2005, a journalist from El Nuevo Día, a Puerto Rican newspaper, called him to inquire about rumors that employees at the Puerto Rico State Department were selling Iraqi dinars during office hours. Méndez-Aponte contacted Bonilla to inform him about the journalist's inquiry and they set up a meeting to discuss the matter the next day. The next day, before this discussion could take place, Méndez-Aponte found out from the press that Bonilla had fired him and had also asked the Director of the Government Ethics Office to investigate the rumors that dinars were sold at the Puerto Rico State Department. According to Méndez-Aponte, that same day, the Subsecretary of State asked Méndez-Aponte to meet with an investigator who was conducting an inquiry regarding the allegations. On August 24, 2005, Méndez-Aponte received a written notification, dated August 22, 2005, informing him that he had been removed from his position due to illegal conduct. Specifically, the letter stated that Méndez-Aponte was suspended because he "engaged in . . . conduct that is clearly detrimental to the moral and good name of the Department."[1]

---

[1] In his motion for summary judgment, Bonilla alleged that he fired Méndez-Aponte because he no longer trusted him due to the allegations that he may have been involved in the sale of Iraqi dinars.

On June 27, 2006, Méndez-Aponte, his wife, and their conjugal partnership filed a complaint against, inter alios,[2] the Commonwealth of Puerto Rico, Fernando Bonilla, in his official and personal capacities, Bonilla's wife, and their conjugal partnership, in the United States District Court for the District of Puerto Rico.  The plaintiffs filed their complaint pursuant to the Civil Rights Act of 1991, 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988, alleging violations of the First, Fifth, and Fourteenth Amendments to the United States Constitution.  They asked the court to exercise supplemental jurisdiction over their Puerto Rico law claims.

On April 27, 2007, the plaintiffs filed their amended complaint including Bonilla, in his personal and official capacity as Secretary of State of the Puerto Rico State Department, as the only defendant.  Bonilla filed an answer to the amended complaint on October 15, 2007.  On August 12, 2008, the plaintiffs filed a notice of partial voluntary dismissal of their claims alleging Fourteenth Amendment due process violations.  On August 26, 2008, the district court entered partial judgment dismissing with

---

[2]  The original complaint also included the following defendants: the Commonwealth of Puerto Rico; the Puerto Rico State Department; Winda Torres, Lilly Castro, Sara González-Surí, Yanis Blanco, Orlando Rodríguez, José Negrón, José C. Díaz-Ortiz, Rafael Subero, Zaira Caraballo, and Isabel Colberg, each in her or his official and personal capacities, together with each of his or her spouses and their conjugal partnerships; John Doe, Jane Roe, Corporation X, Y, Z; and Insurance Company S, T, V.  These defendants were not included in the plaintiffs' amended complaint.

prejudice plaintiffs' claims alleging violations of Méndez-Aponte's rights under the Fourteenth Amendment.

On April 4, 2009, the defendant filed a motion for summary judgment requesting that the district court dismiss the plaintiffs' section 1983 political discrimination claim because plaintiffs failed to establish a prima facie case of political discrimination or, in the alternative, because Bonilla was entitled to qualified immunity.  The plaintiffs filed a timely opposition to the motion for summary judgment and a statement of contested material facts on April 23, 2009.  On September 16, 2009, the district court entered an order granting Bonilla's motion for summary judgment and dismissing Méndez-Aponte's section 1983 political discrimination claims with prejudice and dismissing the supplemental state law claims without prejudice.  See Méndez-Aponte v. Puerto Rico, 656 F. Supp. 2d 277 (D.P.R. 2009).  The district court found that the plaintiffs failed to properly dispute the defendant's statement of uncontested material facts because their denials and qualifications of the defendant's fact statements were "mostly irrelevant to the matter at hand and consist of mere 'speculation, generalities, conclusory assertions, improbable inferences and, for lack of a better phrase, a lot of "hot air."'" Id. at 281 (quoting Domínguez v. Eli Lilly and Co., 958 F. Supp. 721, 728 (D.P.R. 1997)).  The court therefore took its factual

findings mainly from Bonilla's statement of uncontested material facts.[3]  Id.

The district court concluded that Méndez-Aponte could be terminated without cause because he held a trust position for which party affiliation was an appropriate qualification for continued employment.  Id. at 288-89.  The court therefore dismissed Méndez-Aponte's political discrimination claim.  Id. at 289.  Pursuant to Federal Rule of Civil Procedure 11(b), the court also imposed a sanction of $1,000 each on attorneys Nicolás Nogueras-Cartagena and Patricia Ramírez Gelpí.  Id. at 291.  The court found that the attorneys failed to properly dispute Bonilla's statement of uncontroverted facts, that their memorandum of law failed to specify the documents in the record that supported their contentions and left blank the number of the exhibit to which they were referring the court, and that their "long and generally incomprehensible opposition [was] frivolous and totally devoid of any semblance of colorable merit."  Id. at 290-91.

---

[3]  On appeal, Méndez-Aponte challenges the district court's decision to glean the facts from Bonilla's statement of uncontested material facts.  As discussed infra at 18, we agree with the district court that Méndez-Aponte's allegations lacked proper evidentiary support.  We conclude that, pursuant to the District of Puerto Rico's Local Rule 56(e), the district court properly deemed Bonilla's facts admitted.

## II.  Discussion

### A.  Motion for Summary Judgment

Our review of the district court's entry of summary judgment is de novo.  Del Toro Pacheco v. Pereira, 633 F.3d 57, 62 (1st Cir. 2011).  We draw all reasonable inferences in favor of the non-moving party.  Lopera v. Town of Coventry, 640 F.3d 388, 395 (1st Cir. 2011); Del Toro Pacheco, 633 F.3d at 62.  "We ignore any 'conclusory allegations, improbable inferences, and unsupported speculation.'"  Del Toro Pacheco, 633 F.3d at 62 (quoting Sutliffe v. Epping Sch. Dist., 584 F.3d 314, 325 (1st Cir. 2009)).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).[4] "We may affirm summary judgment on any ground manifest in the record."  Klaucke v. Daly, 595 F.3d 20, 24 (1st Cir. 2010) (internal quotation marks omitted).

The First Amendment protects public employees from adverse action due to their political affiliation, unless political affiliation is an appropriate requirement for the position.  See Branti v. Finkel, 445 U.S. 507, 518 (1980); Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 13 (1st Cir. 2011).  A plaintiff

[4]  We cite the amended version of Rule 56, effective December 1, 2010, because doing so is just and practicable where the standard for granting summary judgment remains unchanged.  See Ophthalmic Surgeons, Ltd. v. Paychex, Inc., 632 F.3d 31, 35 n.4 (1st Cir. 2011).

-8-

seeking to establish a political discrimination claim under 42 U.S.C. § 1983 must establish four elements: "(1) that the plaintiff and defendant have opposing political affiliations, (2) that the defendant is aware of the plaintiff's affiliation, (3) that an adverse employment action occurred, and (4) that political affiliation was a substantial or motivating factor for the adverse employment action." Ocasio-Hernández, 640 F.3d at 13 (internal quotation marks omitted). Here, Bonilla argues that political affiliation is a proper requirement for Méndez-Aponte's position and that, therefore, Bonilla could properly fire Méndez-Aponte for his political affiliation.

The question of whether political affiliation is an appropriate basis for dismissal is a legal one for the court. Uphoff Figueroa v. Alejandro, 597 F.3d 423, 429 (1st Cir. 2010); Hadfield v. McDonough, 407 F.3d 11, 15 (1st Cir. 2005). This circuit has typically conducted a two-part analysis to make this determination. See Hadfield, 407 F.3d at 16; Duriex-Gauthier v. López-Nieves, 274 F.3d 4, 9 (1st Cir. 2001). We ask (1) "whether the governmental unit decides 'issues where there is room for political disagreement on goals or their implementation,'" Ruiz-Casillas v. Camacho-Morales, 415 F.3d 127, 132 (1st Cir. 2005) (quoting Jiménez Fuentes v. Torres Gaztambide, 807 F.2d 236, 241-42 (1st Cir. 1986) (en banc)), and (2) whether "the specific responsibilities of the position resemble those of a policymaker or

-9-

other officeholder whose functions are such that party affiliation is an appropriate criterion for holding the post," Hadfield, 407 F.3d at 16. We have upheld political dismissals of mid- or upper-level employees where the employee "merely represented the agency's policy positions to other entities or to the public or where important personnel functions were part of the portfolio." Flynn v. City of Boston, 140 F.3d 42, 45 (1st Cir. 1998).

Turning to the first inquiry, we agree with the district court that the Puerto Rico State Department handles matters where there is room for political disagreement on goals or their implementation. See Méndez-Aponte, 656 F. Supp. 2d at 286 (holding that the first prong of the inquiry was satisfied). The Governor of Puerto Rico, who is "elected by direct vote in each general election," P.R. Const. art. IV, § 1, appoints the Secretary of State, id. § 5. The Secretary of State is charged with "promulgat[ing] all proclamations and orders of the Governor and all laws enacted by the Legislative Assembly." P.R. Laws Ann. tit. 3, § 51. Further, the Puerto Rico State Department is in charge of arranging the visits of "personages from foreign countries who can come and observe Puerto Rican life and who . . . can in some way make known outside of Puerto Rico the facts concerning [Puerto Rico]." Id. § 62. This is certainly a politically sensitive task. Given that the Puerto Rico State Department and the Governor of Puerto Rico have a close working relationship, the State Department

represents Puerto Rico to governments of other countries, and the policy goals of the State Department may change with different administrations, we hold that the State Department is an agency that "involve[s] decision making on issues where there is room for political disagreement on goals or their implementation." Olmeda v. Ortiz-Quiñonez, 434 F.3d 62, 66 (1st Cir. 2006) (internal quotation marks omitted).

We now look to the specific responsibilities of the position to determine whether party affiliation is an appropriate requirement. Ruiz-Casillas v. Camacho-Morales, 415 F.3d 127, 132 (1st Cir. 2005). In applying the second prong of the analysis, this court has looked at a variety of factors which include

> the relative compensation level for the position, the technical expertise (if any) required to do the job, the extent to which the position involves supervision and control over others, the degree to which the position confers authority to speak in the name of higher-ups who themselves are policymakers, the influence of the position over programs and policy initiatives, and the public perception of what the position entails.

Galloza v. Foy, 389 F.3d 26, 29-30 (1st Cir. 2004) (citing Jiménez-Fuentes, 807 F.2d at 242). We also consider "the relationship of the position to elected officials, party leaders, and partisan politics." Id. at 30. We focus only on "the inherent duties of the position under review and do not consider the actual tasks performed by a present or past officeholder." Roldán-Plumey v. Cerezo-Suárez, 115 F.3d 58, 64 (1st Cir. 1997); accord Jiménez-

-11-

<u>Fuentes</u>, 807 F.2d at 242. The official job description is a presumptively reliable basis for determining the actual functions of the position. <u>Uphoff-Figueroa</u>, 597 F.3d at 430; <u>Roldán-Plumey</u>, 115 F.3d at 62.

Because we have an official job description available, we begin with this document.[5] <u>See</u> <u>Galloza</u>, 389 F.3d at 30 ("[I]f a formal job description exists, it is important for an inquiring court to look to the specifics of that document."). The job description for the position of Assistant Secretary of State for Protocol Affairs lists the following relevant duties:

> 2. [Advise][6] the Secretary of State on the formulation of public policy that will rule his work area, or to [sic] the management of staff of the Department and the representatives of public and private organizations as to the mission and goals of the different activities and services provided.
> . . . .
> 4. Prepare rules and analyze administrative and fiscal procedures to formulate

---

[5] According to the human resources records, Méndez-Aponte's employee status is listed as one of "confidence." Under Puerto Rico law, government positions are classified as career or trust/confidence. <u>Uphoff-Figueroa</u>, 597 F.3d at 430 n.7; <u>Morales-Santiago</u> v. <u>Hernández-Pérez</u>, 488 F.3d 465, 469 (1st Cir. 2007). Although we have previously found such classifications relevant, they are not dispositive of whether political affiliation is an appropriate requirement for a position. <u>López-Quiñones</u> v. <u>P.R. Nat'l Guard</u>, 526 F.3d 23, 26 (1st Cir. 2008).

[6] The certified translation of the job description translates the Spanish word "asesorar" as "assess." According to many Spanish-English dictionaries, however, "asesorar" means "to advise, counsel." <u>See</u>, <u>e.g.</u>, Cassell's Spanish Dictionary 94 (1968). We have modified the translation accordingly.

-12-

recommendations about [matters][7] under his jurisdiction.

5. Represent and/or accompany the Secretary of State or the Governor and the Under-Secretary on official acts, as required.

6. Responsible for the planning, development, supervision and execution of visits of high ranking dignitaries from different governments [commissioned][8] by the Secretary of State and the Governor of the Commonwealth of Puerto Rico.

7. To counsel the Secretary of State and the Governor of the Commonwealth of Puerto Rico as to international, local, military and civil protocol affairs.

8. To establish and maintain the necessary coordination with other government agencies, civic, cultural and entrepreneurial organizations on the island and from abroad, also with diverse institutions of international character, related with [sic] their work area.
. . . .
11. Answer inquiries, prepare [memoranda][9] and communications of [a] confidential [nature] for the signing of the Secretary and to

---

[7] The certified translation of the job description translates the word "asuntos" as "manners." We have modified the translation. See Cassell's Spanish Dictionary 97 (1968) (translating "asuntos" as "matters").

[8] The certified translation of the job description translates the word "encomienda" as "entrusted." We have modified the translation. See Cassell's Spanish Dictionary 369 (1968) (translating "encomienda" as "commission").

[9] The certified translation of the job description translates the word "memoriales" as "memorials." We have modified the translation. See Cassell's Spanish Dictionary 556 (1968) (translating "memorial" as "memorandum").

-13-

represent him in [meetings], public hearings and conferences, among other activities.[10]

These duties strongly suggest that political affiliation is an appropriate requirement for the position.  Many of these duties are not purely ministerial and are open-ended.  See Galloza, 389 F.3d at 31 (noting that open-ended job description duties generally allow the employee to exercise discretion "and, thus, tend to indicate that a position is policymaking in nature").  For example, the position can involve formulating recommendations regarding matters under the jurisdiction of the Secretary for Protocol Affairs, and counseling the Secretary of State and the Governor of Puerto Rico regarding "international, local, military and civil protocol affairs."  These duties indicate a level of discretion that indicates that the position involves policymaking.

Méndez-Aponte's position also involves "supervision and control over others."  Galloza, 389 F.3d at 29.  It is uncontested that the position of Secretary for Protocol Affairs involves supervising employees; four employees report directly to the person in this position.  López-Quiñones v. P.R. Nat'l Guard, 526 F.3d 23, 26 (1st Cir. 2008) (considering that the terminated employee

---

[10]  The certified translation of the job description translates the word "índole" as "manner" and "reuniones" as "reunions."  We have modified the translations.  See Cassell's Spanish Dictionary 681 (1968) (translating "reuniones" as "meetings"); WordReference.com Spanish-English Dictionary, http://www.wordreference.com/es/en/translation.asp?spen=indole (translating "índole" as "kind, nature") (last visited June 24, 2011).

-14-

supervised other employees as a factor indicating that the position involves discretionary judgments and policymaking). In addition, the Secretary for Protocol Affairs reports directly to the Secretary of State and the Sub-Secretary of State and we have previously considered that "report[ing] to those in the upper echelons of [an] agency" is indicative of a policymaking position. See Hadfield, 407 F.3d at 17.

The position may also involve acting as a liaison to other government agencies, "represent[ing]. . . the Secretary of State or the Governor and the Under-Secretary" in official acts, representing the Secretary of State "in [meetings], public hearings and conferences, among other activities," and supervising and executing the visits of important dignitaries from foreign governments. These functions involve representing the Puerto Rico Governor's or the Secretary of State's views to other agencies, the public, and other governments. We consider these functions to be exemplary of the position's spokesperson-like capacities, which we have previously considered to be indicative of a policymaking position. Uphoff Figueroa, 597 F.3d at 429 ("[I]t is enough that the official [is] involved in policy, even if only as an adviser, implementer, or spokesperson." (emphasis and second alteration in original) (quoting Flynn, 140 F.3d at 46) (internal quotation marks omitted)).

Looking at the inherent duties of the position of Assistant Secretary of State for Protocol Affairs, we hold that political affiliation is an appropriate qualification for the position and that, therefore, it is one that is not federally protected against political discrimination. The district court properly granted Bonilla's motion for summary judgment on the ground that Méndez-Aponte held a trust position that was not protected under the First Amendment.

## B. Sanctions

We review the district court's decision to impose sanctions for abuse of discretion. Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405 (1990) ("[A]n appellate court should apply an abuse-of-discretion standard in reviewing all aspects of a district court's Rule 11 determination."); Meléndez-García v. Sánchez, 629 F.3d 25, 33 (1st Cir. 2010); Young v. City of Providence ex rel. Napolitano, 404 F.3d 33, 38 (1st Cir. 2005). A district court abuses its discretion when its ruling is based on an erroneous view of the law or on clearly erroneous factual findings. See F.A.C., Inc. v. Cooperativa de Seguros de Vida de P.R., 563 F.3d 1, 6 (1st Cir. 2009).

We give deference to a district court's decision to impose sanctions because it is in the best position to "evaluate the circumstances surrounding an alleged violation and render an informed judgment." McLane, Graf, Raulerson & Middleton, P.A. v.

-16-

Rechberger, 280 F.3d 26, 44 (1st Cir. 2002) (quoting Cruz v. Savage, 896 F.2d 626, 632 (1st Cir. 1990)) (internal quotation marks omitted). "Rule 11(b) is not a strict liability provision and a showing of at least 'culpable careless[ness]' is required before a violation of the Rule can be found." Citibank Global Markets, Inc. v. Rodríguez Santana, 573 F.3d 17, 32 (1st Cir. 2009) (alteration in original) (citations omitted); Young, 404 F.3d at 39.

Rule 11(b) states that "by signing, filing, submitting, or later advocating" a pleading, the party represents that

> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b)(3)-(4).

The district court listed the following as its reasons for imposing sanctions on the two attorneys: (i) the document was "incomprehensible"; (ii) the document included an irrelevant history of the Puerto Rico State Department; and (iii) the opposition was sloppy and careless as evidenced by, for example, omissions in the citations to the record. Méndez-Aponte, 656 F. Supp. 2d at 290-91. After reviewing the filings and the record, we conclude that the court did not abuse its discretion in imposing

-17-

sanctions.  We agree with the district court that the plaintiffs' opposition to summary judgment and the statement of contested material facts consist, in large part, of speculation and conclusory allegations for which the only evidentiary support is Méndez-Aponte's sworn affidavit, which itself contains conclusory allegations.  See id. at 281.  Neither filing has any promise of likely evidentiary support.  We provide one example of the conclusory allegations included in the opposition to summary judgment:

> Plaintiff's conduct [-- speaking in favor of the purchase of Iraqi dinars --] was constitutionally protected.  And it was under the pretext of this conduct that he was condemned and discriminated against. Plaintiff did not hold a policy making position, and his political affiliation was not a requirement for the office held. . . . [P]ursuant to the difference in political affiliation [between Méndez-Aponte and Bonilla,] he was suspended from his employment.

After engaging in the same wild-goose chase that the district court had to endure to find evidentiary support for Méndez-Aponte's factual allegations, we hold that the district court did not abuse its discretion in concluding that Méndez-Aponte's attorneys violated Federal Rule of Civil Procedure 11(b).  We therefore affirm its imposition of sanctions.

## III.  Conclusion

For the aforementioned reasons we affirm the district court's grant of summary judgment in appellee's favor and its imposition of sanctions.

**<u>Affirmed</u>**.