**Ibrahim A. Sauri CORTES, et al., Plaintiff(s),**

v.

**Luis Fortuno BURSET, et al., Defendant(s).**

**Civil No. 09–1650 (DRD).**

United States District Court, D. Puerto Rico.

Dec. 20, 2012.

As Amended Nunc Pro Tunc by Supplemental Order Dec. 27, 2012.

Annabelle L. Mullen–Pacheco, Leila S. Castro–Moya, San Juan, PR, Eduardo A. Vera–Ramirez, Eileen Landron–Guardiola, Luis A. Rodriguez–Munoz, Maria L. Santiago–Ramos, Landron & Vera LLP, Guaynabo, PR, Julio Cesar Alejandro–Serrano, Bayamon, PR, for Plaintiffs.

Claudio Aliff–Ortiz, Sheila J. Torres–Delgado, Ivan M. Castro–Ortiz, Michael C. McCall, Aldarondo & Lopez Bras, Guaynabo, PR, for Defendants.

## AMENDED OPINION AND ORDER NUNC PRO TUNC

DANIEL R. DOMINGUEZ, District Judge.

Pending before the Court are: (a) defendants' *Memorandum of Law Requesting Summary Judgment;* (b) defendants'

*Statement of Uncontested Facts in Support of Motion for Summary Judgement,* Docket entries No. 98–99; and (c) plaintiffs' opposition thereto, Docket entries No. 111 and 112. For the reasons set forth below, the defendants' request for summary judgment is granted.

### Introduction

The instant case constitutes a political discrimination case that stems from the change in administration after the New Progressive Party ("NPP") won the elections in the year 2008. After the new Governor and defendant herein, Luis Fortuño Burset (hereinafter "Fortuño") started his term on January 2, 2009, encountered a critical and difficult dire financial situation in the Government of Puerto Rico. Hence, severe and drastic economic measures had to be taken forthwith by Governor Fortuño to avoid a worst scenario. One of the legislative measures taken was the enactment of the Act No. 7 of March 9, 2009, 3 L.P.R.A. §§ 8791 *et seq.* (hereinafter "Act No. 7"), which provides for deep government spending cuts in order to cut a $3.2 billion structural deficit. *See Domínguez Castro v. E.L.A.,* 178 D.P.R. 1 (2010),[1] wherein the Puerto Rico Supreme Court upheld the constitutionality of Act No. 7. *See also United Automobile, Aerospace, Agricultural Implement Workers of America International Union, et al. v. Fortuño, et al.,* 633 F.3d 37 (1st Cir.2011), wherein the Act No. 7 passed federal scrutiny. One of the measures taken by Governor Fortuño was to reduce the size of the government, amongst others, including the number of the government employees designated at the Governor's mansion best known as "La Fortaleza."[2] Plaintiffs herein generally allege that they were unjustly laid off because they were members of the opposing political party, the Popular Democratic Party ("PDP").

The instant action is premised on plaintiffs' alleged violations under the Constitution of the United States, to wit, the First Amendment, Due Process and Equal Protection Clauses, as well as violations under the Constitution of the Commonwealth of Puerto Rico, "and pray equitable relief in the form of economic and punitive damages, pursuant to the Civil Rights Act of 1866 [sic], 42 U.S.C. § 1983." Plaintiffs, however, failed to identify the specific violations under the Constitution of the Commonwealth of Puerto Rico and/or any other Puerto Rico law *albeit* their request for supplemental jurisdiction. The Court deems this argument waived. *See United States v. Zannino,* 895 F.2d 1, 17 (1st Cir.1990) (explaining that legal points alluded to in a perfunctory manner, but unaccompanied by developed argumentation, are deemed abandoned); *Dávila v. Corporación De Puerto Rico Para La Difusión Pública,* 498 F.3d 9, 14–15 (1st Cir.2007) ("A party waives a right only if he intentionally relinquishes or abandons it; he forfeits a right by failing to assert it in a timely manner.") *See United States v. Olano,* 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *United States v. Rodríguez,* 311 F.3d 435, 437 (1st Cir. 2002). Hence, the matter now pending be-

1. The Puerto Rico Supreme Court official translation of the *Domínguez Castro v. E.L.A.,* is currently unavailable at the Supreme Court. However, the official translation will be available in the near future, as the Translations Department of the Puerto Rico Supreme Court is currently reviewing the final draft.

2. La Fortaleza is a three building compound consisting of: (a) La Fortaleza where the Governor's office and residence are located; (b) the "Palacio Rojo" located next to La Fortaleza at 54 Fortaleza St.; and (c) the Marshalls Building located at the corner of San José and Fortaleza streets.

fore the Court is the defendants' motion for summary judgment.

### Factual and Procedural Background

The instant case was filed on July 13, 2009. An *Amended Complaint* was filed on July 30, 2009, Docket No. 10, as an action under the Civil Rights Act, 42 U.S.C. § 1983. Plaintiffs allege that they are career employees and were laid off because they were members of the PDP without first reviewing their employee file. Plaintiffs also allege in the *Amended Complaint* that they have not been paid their salaries, vacations, and any other benefits, as of the date of July 13, 2009, the date of the filing of the *Amended Complaint.* Plaintiffs further allege that "prior to the 2008 General Election each and all plaintiffs were employed at the Governor's Mansion as public employees that performed non-policy making functions." *See Amended Complaint,* Docket No. 10, ¶ 4.

On September 3, 2009, the defendants filed a *Motion to Dismiss under Fed.R. Civ.P, 12(b)(6) and/or for Judgment on the Pleadings Pursuant to Fed.R. Civ.P. 12(c),* Docket No. 20. Plaintiffs filed their opposition on September 14, 2009, *see* Docket No. 24. On November 9, 2011, the Court granted in part and denied in part the defendants' motion to dismiss based on the related opinions issued by the United States Court of Appeals for the First Circuit (hereinafter the "First Circuit"), *Peñalbert–Rosa v. Fortuño–Burset, et al.,* 631 F.3d 592 (1st Cir.2011); *Ocasio–Hernández, et al. v. Fortuño–Burset, et al.,* 640 F.3d 1 (1st Cir.2011).

■ In the instant case, the Court dismissed with prejudice the plaintiffs' Equal Protection Clause claims. The Court also dismissed without prejudice all personal claims of the plaintiffs' spouses under Puerto Rico law, although the Court reserved its ruling on the conjugal partnerships and/or domestic partnerships for a later stage in the proceedings. Lastly, the Court also denied the defendants' request to assert qualified immunity at this stage of the proceedings, as well as plaintiffs' Due Process Clause claims. In the instant case, plaintiffs claim that the defendants have: (a) violated their right to due process as they are career employees under applicable Puerto Rico law; and, (b) the defendants' actions violated the Classification Plan at La Fortaleza, by failing to provide a pretermination hearing and failure to comply with the proper notice requirement.[3] *See Opinion and Order* of September 9, 2011, Docket No. 35.

### The Discovery

After an intense, troublesome, rocky road through the discovery, the defendants moved the Court for summary judgment. *See* Docket entries No. 98 and 99. The response to the motion for summary judgment was due on June 25, 2012. *See Order* of May 29, 2012, Docket No. 95. Plaintiffs' opposition was filed on July 5, 2012 under Docket No. 111, after several

---

**3.** There is no pretermination hearing required for non-career employees, as said hearing is a requirement only for public employees having "had a property right in continued employment.... If they did, the State could not deprive them of this property without due process...." *See Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 538–539, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). In the instant case, the plaintiffs' term on their trust positions expired on December 31, 2008, as their salaries were being funded by the Salary Incentive Program enacted under Act No. 52, which also expired on December 31, 2008. Thereafter, plaintiffs were all terminated on January 9, 2009. As to the required notice, this matter is strictly a matter of local law, which constitutes a supplemental claim which is being dismissed without prejudice, as the federal claim is being dismissed herein. But the Court notes that the law providing funds expired on December 31, 2008.

motions for extension of time. On July 17, 2012, the defendants filed a *Motion To Strike Plaintiffs' Opposing Statements of Fact, That Certain Defendants' Statements Of Uncontested Facts Be Deemed Admitted And That Summary Judgment Be Granted,* Docket No. 116. On July 20, 2012, plaintiffs filed *Plaintiffs' Motion To Strike Defendants Objection,* Docket No. 119. However, for the reasons set forth below, plaintiffs' opposition filed under Docket No. 111 was stricken from the record for failure to comply with the Court's *Orders, see* Docket entries No. 132 and 141.

When considering whether to grant the motion to strike filed by the defendants under Docket No. 116, the Court had to restate the convoluted discovery track in this case, which it is summarized below.

The record shows a rather long history of disagreements amongst counsel regarding the discovery. The Court's summary starts from the latest events set forth in the Minutes of April 20, 2012, Docket No. 87, wherein the Court set a final case management Order to move the case forward. Paragraph number 4 of the Minutes, Docket No. 87, specifically provides that "[i]f the documents are not furnished on or before **April 28, 2012,** counsel [for plaintiffs] will be unable to use them at trial, and they will be treated as adverse evidence under the negative inference principle." (Emphasis in the original).

On May 1, 2012, defendants moved the Court by *Motion Requesting Order For Plaintiffs Not To Be Able To Use At Trial Documents Not Produced By April 28, 2012; And That They Be Deemed As Adverse Evidence Under The Negative Treatment Principle, Pursuant To Order At Docket Document No. 87,* Docket No. 90. On May 2, 2012, the Court entered an Order granting the plaintiffs three business days to answer why the defendants'

motion filed under Docket No. 90, should not be granted, see Docket No. 91. Plaintiffs' reply was filed on May 7, 2012 under Docket No. 92. However, on May 30, 2012, the defendants filed a *Reply To Plaintiffs' Motion In Opposition To Defendants' Motion Requesting Order,* Docket No. 96, wherein the defendants reiterate that the documents that plaintiffs allege were produced, as set forth in their motion filed under Docket No. 92, have not been duly disclosed, as the documents had not been produced, with a few exceptions set forth in the defendants' motion filed under Docket No. 96.

On June 6, 2012, the defendants' *Memorandum Of Law Requesting Summary Judgment,* as well as the *Statement Of Uncontested Facts In Support Of Motion For Summary Judgment* followed, see Docket entries No. 98 and 99. The amended due date to file the plaintiffs' opposition to the motion for summary judgment was June 25, 2012, see Docket entries No. 94 and 95. Notwithstanding, plaintiffs moved the Court on June 7, 2012 for an extension of time until August 25, 2012, which was granted in part and denied in part, as the jury trial was set to begin on August 20, 2012. The Court granted plaintiffs until June 29, 2012 to file their opposition, *see* Docket entries No. 101 and 105. Moreover, on June 29, 2012, plaintiffs filed a *Plaintiffs' Emergency Motion Requesting A Final Brief Term Of Three Additional Working Days, Until 5 July 2012, To File Their Opposition To Defendants' Motion For Summary Judgment And Statement of Uncontested Facts,* Docket No. 109. Plaintiffs' request for extension of time until July 5, 2012 to reply was granted by *Order* of even date, *see* Docket No. 110. The record shows that, on July 5, 2012, plaintiffs filed *Plaintiffs' Objections To Defendants' Statement Of Uncontested Facts,* and *Plaintiffs' Op-*

*position To Defendants' Motion For Summary Judgment,* Docket entries No. 111 and 112.

�no The Court granted plaintiffs' requests for extensions of time based upon the discretionary power of the Court, *albeit* said motions failed to meet the threshold of Rule 56(f) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."). *See Vélez v. Awning Windows, Inc.,* 375 F.3d 35, 40 (1st Cir.2004). The Court held in *Vélez,* that a party opposing a motion for summary judgment should be allowed time, if requested, to properly respond to the request, however, in compliance with the provisions of Fed.R.Civ.P. 56(f).

A party who legitimately requires more time to oppose a motion for summary judgment has a corollary responsibility to make the court aware of its plight. Typically, this is accomplished by way of either a Rule 56(f) motion or its functional equivalent. *See Vargas–Ruiz v. Golden Arch Dev., Inc.,* 368 F.3d 1, 3–4 (1st Cir.2004); *Corrada Betances v. Sea–Land Serv., Inc.,* 248 F.3d 40, 44 (1st Cir.2001). The record on appeal contains nothing of the sort: the defendants neither invoked nor substantially complied with Rule 56(f). To benefit from the protections of Rule 56(f), a litigant ordinarily must furnish the nisi prius court with a timely statement—if not by affidavit, then in some other authoritative manner—that (i) explains his or her current inability to adduce the facts essential to filing an opposition, (ii) provides a plausible basis for believing that the sought-after facts can be assembled within a reasonable time, and (iii) indicates how those facts would influence the outcome of the pending summary judgment motion. *See Vargas–Ruiz,* 368 F.3d at 4; *Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 988 (1st Cir.1988). Such a litigant also must have exercised "due diligence both in pursuing discovery before the summary judgment initiative surfaces and in pursuing an extension of time thereafter." *Resolution Trust Corp. v. N. Bridge Assocs., Inc.,* 22 F.3d 1198, 1203 (1st Cir.1994).

On July 17, 2012, the defendants filed a *Motion To Strike Plaintiffs' Opposing Statements of Fact, That Certain Defendants' Statements Of Uncontested Facts Be Deemed Admitted And That Summary Judgment Be Granted,* Docket No. 116. In a nutshell, the defendants argued that summary judgment is warranted as plaintiffs failed to controvert the defendants' statement of uncontested facts on several grounds, to wit: (a) some of the statements are not in controversy, because they were admitted; (b) statements that are not in controversy, because they were not opposed; and, (c) statements that were not properly controverted. Defendants included a chart summarizing the defendants' objections to the plaintiffs' statements. *See* Docket No. 116.

On July 20, 2012, plaintiffs filed *Plaintiffs' Motion To Strike Defendants Objection,* Docket No. 119. Plaintiffs moved to strike the defendants' motion to strike on the grounds that the defendants failed to seek leave from the Court to file said motion, and that the Court had stated that no reply or sur-reply would be allowed, making reference to the Minutes and Order of April 20, 2012, Docket No. 87. On July 23, 2012, the Court entered an *Order* finding that "[t]he Court does not consider defendants' motion to strike filed under Docket No. 116, as a substantive reply. The Court shall merely consider it as a motion standing for the proposition of lack of procedural compliance of Rule 56 of the Federal Rules of Civil Procedure' requirements." *See* Docket No. 121.

On August 1, 2012, the Court entered an *Order* authorizing plaintiffs to reply to defendants' motion to strike filed under Docket No. 116, "as to the following bounds: (a) Whether plaintiffs have in fact complied with the local rules and the judicial interpretation thereof, as to compliance with the standards of Fed.R.Civ.P. 56. You may not, however, cure any procedural defects, or add any new substantive issues [facts]. (b) Should the defendants' motion, Docket No. 116, add any substantive issues, you may reply only to those substantial issues, which may have been added. Plaintiffs are granted five (5) business days to comply with this Order, that is, August 8, 2012 by 5:00 p.m. . . . ." *See Order,* Docket No. 125.

The Pretrial Conference was held on August 7, 2012, wherein the Court informed counsel that the jury trial set for August 20, 2012 had to be continued *sine die* due to a conflict with the criminal calendar, specifically the criminal jury trial that the undersigned was presiding, Criminal No. 11–241(DRD). The Court further informed counsel that it has been unable to entertain the defendants' summary judgment request, as plaintiffs has yet to comply with the *Order* of August 1, 2012, Docket No. 125. *See* Minutes and Order of August 7, 2012, Docket No. 132.

Notwithstanding, on August 8, 2012, plaintiffs filed yet an *Emergency Motion For An Extension Of Time To Comply With The Order To Reply To The Defendants' Objections,* Docket No. 130. Plaintiffs' request for extension of time was granted on even date by *Order,* Docket No. 131. Plaintiffs filed their *Motion In Response To Defendants' "Motion To Strike" At Docket 116,* Docket No. 136, page 2, wherein they allege that the defendants apparently filed their motion to strike based upon "a draft of plaintiffs' opposition to SUF, lacking proper reference to documents cited in support, **that was filed in error and later substituted.**" (Emphasis in the original).

On August 16, 2012, the defendants filed *Defendants' Motion For Clarification Of Plaintiffs' Response, Document # 136,* Docket No. 137, wherein the defendants vehemently opposed to plaintiffs' response, as the record does not show "any motion or notice correcting or re-filing # 111, plaintiffs' Opposition to Defendants' SUF." *See* Docket No. 137, page 1. On August 17, 2012, plaintiffs replied "that the document that was wrongly filed at Docket 111 was immediately substituted, and the one that is at present in the system is the correct version. If the electronic docket is opened and Docket 111 is retrieved, the correct version will be obtained." *See* Docket No. 138. On even date, the Court entered an *Order* "noted and moot. See plaintiffs' Response. Docket No. 138." *See* Docket No. 139.

On the same date, that is, August 17, 2012, the defendants promptly filed a *Motion For Reconsideration Of Order Deeming As Moot Defendants' Motion To Clarify At Docket Document No. 137; Requesting That The Document Entered To Replace Dkt. 111 Be Stricken From The Record; Reiterating Motion To Strike At Docket Document No. 116; And That Consequently, Defendants Memorandum Of Law For Summary Judgment And Statement Of Uncontested Facts At Docket Document Nos. 98 And 99 Be Granted.* *See* Docket No. 140. Defendants further reiterate that plaintiffs somehow substituted the original document filed on July 5, 2012 under Docket No. 111, for a final version of plaintiffs' opposition to the defendants' statement of uncontested facts, July 6, 2012 at 3:14 p.m. AST, without leave of Court, and without providing notice to the defendants. Furthermore, based upon

the Court's record, there is no Court order authorizing plaintiffs' substitution of the **belated document filed on July 6, 2012** under Docket No. 111. (Emphasis ours). Defendants further argue that *Plaintiffs' Motion In Response To Defendants' "Motion To Strike" At Docket 116*, was filed on August 15, 2012, after yet another extension of time requested by plaintiffs. *See* Docket entries No. 130, 131 and 136.

Based on the foregoing, on September 11, 2012, and after more than 14 days had elapsed after the defendants' motion for reconsideration was filed on August 17, 2012, the Court entered the following *Order*: "There being no timely objections filed, the request for reconsideration is granted as requested. Defendants' request to strike plaintiffs' statements at Docket No. 99 is deemed submitted. The remaining part of the defendants' request is taken under advisement. *See* Docket No. 140, page 8(3). Defendants' request under (4) is moot, Docket No. 140, pages 8–9(4)." *See* Docket No. 141.

■ The Court, however, is deeply troubled by the non-authorized substitution of a document filed by plaintiffs under Docket No. 111, on July 6, 2012 at 3:14 p.m., particularly after the due date to file said document had expired on July 5, 2012.[4] Although there is no local rule governing the procedure to be followed to substitute

a document already filed, the least counsel shall do is to: (a) file a motion requesting leave of Court to substitute document showing good cause why the substitution is warranted; and (b) notify all counsel and parties in interest. The record shows that plaintiffs' counsel failed to file a motion requesting leave of Court to substitute a document, and failed to notify the defendants that the document originally filed under Docket No. 111 was being substituted for whatever reasons. The Court finds plaintiffs' counsel action deplorable, and the same is interpreted as at least deceiving and potentially fraudulent to the Court. *See Hetchkop v. Grassmere, Inc.*, 116 F.3d 28, 33–34 (2d Cir.1997); *McCaddin v. Southeastern Marine, Inc.*, 567 F.Supp.2d 373, 379–384 (E.D.N.Y.2008).

■ Hence, the Court finds that plaintiffs' "surreptitious substitution" of the alleged final version of the document entitled *Plaintiffs' Opposition To Defendants' Motion For Summary Judgment*, filed on July 6, 2012, is unacceptable as being filed: (a) after the due date ordered by the Court, that is, July 5, 2012; (b) without leave of Court authorizing the substitution of the document; and (c) without proper notice to the defendants and any other party in interest. Further, plaintiffs cured procedural defects and added facts to the controversy pending as to the summary

---

4. The Court finds that the substituted document, that is, the document originally filed on July 5, 2012 under Docket No. 111, was plagued with statement of facts without any reference to the record, and in violation to the anti-Ferret rule. *See* Fed.R.Civ.P. 56(e) and Local Rule 56(e). The Court further finds that the defendants rested on the fact that no replies or surreplies were allowed by the Court, pursuant to the Court's *Orders, see* Docket entries No. 87, 105. Notwithstanding, on August 1, 2012, the Court allowed plaintiffs until August 8, 2012 to reply to defendants' *Motion To Strike, see* Order of August 1, 2012, Docket No. 125, and Minutes and Order of August 7, 2012, Docket No. 132. The Court, forewarned plaintiffs that past procedural differences could not be cured on the authorized reply nor new facts could be added that were not contained in the original document filed by plaintiffs. But plaintiffs precisely added new facts and corrected the procedural deficiencies in a late fashion without Court approval. However, plaintiffs' reply was eventually filed on August 15, 2012, Docket No. 136, after several extensions of time.

judgment. Plaintiffs' professional behavior is impermissible before this Court.

As a final note, the Court wishes to add, that even assuming *arguendo* that plaintiffs' replaced document were to be allowed, the admission and consideration of the document would not in any way change the final ruling of the Court, as all plaintiffs admitted not having personal knowledge that any of the defendants knew their political affiliation before terminating their employment on January 9, 2009.

In view of the foregoing, the Court hereby orders that *Plaintiffs' Opposition To Defendants' Motion For Summary Judgment; Plaintiffs Opposition To Defendants' Motion For Summary Judgment, and Plaintiffs' Motion In Response To Defendants' "Motion To Strike" At Docket 116,* be and hereby are stricken from the record. *See Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell, A Partnership v. Medfit International, Inc., et al.,* 982 F.2d 686 (1st Cir.1993). In *Medfit,* the Court dismissed with prejudice the defendant-appellant Rodríguez' counterclaims and cross-claim, as a sanction, for failure to comply with the Court's orders. *See* 982 F.2d at 691–692, and the collection of cases cited therein.

The Court now proceeds with the individual analysis of each plaintiff.

### Plaintiffs' Factual Analysis on a Case–by–Case Basis

At the outset, the Court notes that, since the year 2008, plaintiffs herein were employees whose salaries were funded by the Salary Incentive Program, enacted under the Employment Opportunities Development Fund of August 9, 1991, 29 L.P.R.A. § 711c, also known as "Act No. 52." Prior thereto, plaintiffs herein occupied the same trust positions, however, the *Amended Complaint* is silent as to the funding of plaintiffs' salaries prior to the year 2008. Hence, the Court emphasizes that the plaintiffs were originally employed by the administration of former governors, Sila María Calderón and Aníbal Acevedo Vilá, both PPD members. During the administrations of both Calderón and Acevedo Vilá, plaintiffs' salaries were funded under the Salary Incentive Program enacted under Act No. 52.

At the time of plaintiffs' termination, the defendant Vilmarie Berlingeri ("Ms. Berlingeri") had been recently appointed as the Administrator of the Office of the Governor of Puerto Rico, effective January 3, 2009, Docket No. 99, ¶ 1t. Shortly thereafter, Ms. Berlingeri realized that a considerable number of La Fortaleza employees' salaries were funded by the Salary Incentive Program enacted under Act No. 52, which had expired on December 31, 2008. At the time Ms. Berlingeri became the Administrator of the Office of the Governor of Puerto Rico, there were on or about 341 employees working at La Fortaleza, out of which 189 were being paid with funds from the Salary Incentive Program enacted under Act No. 52. Since, the Salary Incentive Program enacted under Act No. 52 expired on December 31, 2008, there were no additional identified funds to pay these employees effective January 1, 2009. *See* Docket No. 99, ¶¶ 1aa–1hh. The Court notes that all the plaintiffs listed below were fully aware that they were trust employees, as opposed to career employees; during the year 2008 they were provided orientation on the Salary Incentive Program enacted under Act No. 52, as well as written materials by the Office of Human Resources on this regard. Plaintiffs were cognizant that their services were subject to the availability of funds under the Salary Incentive Program enacted under Act No. 52. All plaintiffs acknowledged having been informed and educated on this regard by the Office of Human Resources sometime during the

year 2008. Hence, plaintiffs were cognizant that if no identifiable funds were available after December 31, 2008, then their employment was to be terminated effective January 1, 2009, that is, upon the expiration of the Salary Incentive Program enacted under Act No. 52. All plaintiffs were also consistent to state that they never saw any political propaganda, of any type, at La Fortaleza nor heard any of the defendants making any disparaging remarks about the prior administration or any other similar politically colored remarks, during their service under the new Fortuño administration.

Originally, the *Amended Complaint,* Docket No. 10, had thirty-five plaintiffs including their spouses and conjugal partnerships. The Court now proceeds its analysis on a plaintiff to plaintiff individual factual basis. At the time of entertaining the defendants' summary judgment request, the status of the active plaintiffs was the following:

1. Plaintiffs **Ibrahim A. Saurí Cortés; Vivian R. Ayuso Peña** and **Edith M. López Cabrera** moved for voluntary dismissal with prejudice, and consequently, a *Partial Judgment* was entered on April 20, 2012, Docket No. 89.

2. Facts as to **Nilda Báez Rodríguez.** Ms. Báez Rodríguez worked at La Fortaleza from February 1, 2005 to January 9, 2009, in a trust position as a Conservation and Maintenance employee at the General Services Office, married to Rocky Hidalgo Reyes *albeit* separated from her spouse. Their conjugal partnership is a party to this action. Since the year 2008, plaintiff Báez Rodríguez' salary was paid from funds of the Salary Incentive Program enacted under Act No. 52. She was assigned to clean the Press Office at La Fortaleza. Under the new Fortuño administration, plaintiff Báez Rodríguez worked from January 7–13, 2009. Plaintiff Báez Rodríguez stated that she "cannot affirm that she was substituted and that the person that substituted her, if any, was NPP." She also stated that she never met with any of the defendants herein nor heard any political remarks as to the PDP members. Moreover, plaintiff Báez–Rodríguez stated that she is not aware that any of the defendants "reviewed her personnel file or talked to anyone in order to try to figure out her political affiliation," nor is she "aware what participation, if any, co-defendant Fortuño, co-defendant Vela and co-defendant Blanco had in the determination of terminating her employment." Lastly, plaintiff Báez–Rodríguez stated that she "is not aware what process was followed for co-defendant Berlingeri to sign the termination letter or what participation, if any, she had in the same, besides signing the letter." *See Amended Complaint,* Docket No. 10, ¶¶ 2b, 29–40; and, *Defendants' Statement of Uncontested Facts in support of Motion for Summary Judgment,* Docket No. 99, ¶¶ 14a–14w, Docket No. 120–68 to 120–71, the certified English translations.

3. Facts as to **Lydia Alejandrino Cruz.**

Ms. Alejandrino Cruz worked at La Fortaleza from July 1, 2004 to January 9, 2009, in a trust position as a Maintenance and Conservation employee at the General Services Office. Plaintiff was assigned to clean the Administrator's office which comprises more than ten individual offices. During the year 2008, Ms. Alejandrino Cruz became a participant of the Salary Incentive Program enacted under

Act No. 52. Plaintiff was on vacation during the first days of January 2009, and returned to work on January 9, 2009, that is, on the date when she was terminated. Ms. Alejandrino Cruz stated that upon her return to work she did not see any political propaganda related to any party nor whether NPP employees, if any, were promoted or appointed at La Fortaleza after the change in administration. Plaintiff stated that no one at La Fortaleza knew of her political affiliation nor she has personal knowledge if someone was hired to perform her duties or saw any new employees when she returned to work. Plaintiff further stated that she never had any contact with any of the defendants herein. Lastly, Ms. Alejandrino Cruz stated that she "is not aware whether co-defendant Fortuño, co-defendant Vela, co-defendant Blanco or codefendant Berlingeri knew her political affiliation." *See Amended Complaint,* Docket No. 10, ¶¶ 2c, 52–61; and, *Defendants' Statement of Uncontested Facts in support of Motion for Summary Judgment,* Docket No. 99, ¶¶ 11a–11gg, Docket No. 12–54 to 120–57, the certified English translations.

4. Facts as to **Rosa N. Rivera Hernández.**

Ms. Rivera Hernández worked at La Fortaleza from October 16, 2003 to January 9, 2009, in a trust position as a Conservation and Maintenance employee at the General Services Office. During the year 2008, plaintiff Rivera Hernández became a participant of the Salary Incentive Program enacted under Act No. 52. Plaintiff worked under the new Fortuño administration on January 7, 8 and 9, 2009. Ms. Rivera Hernández was terminated on January 9, 2009. Plaintiff stated that she never had any contact with any of the defendants nor heard any comments from the defendants regarding her employment termination, as well as other employees' termination. Plaintiff also stated that she has no personal knowledge as to the defendants' participation, if any, in plaintiff's employment termination nor as to any other employees. Plaintiff stated that she has no personal knowledge regarding the defendants' participation, if any, in her employment termination nor is she aware that the defendants knew about her political affiliation. *See Amended Complaint,* Docket No. 10, ¶¶ 2d, 113–123; and, *Defendants' Statement of Uncontested Facts in support of Motion for Summary Judgment,* Docket No. 99, ¶¶ 17a–17x, Docket No. 120–81 to 120–83, certified English translations.

5. Facts as to **Héctor J. Feliciano Reyes.**

Mr. Feliciano Reyes worked at La Fortaleza from January 18, 2005 to January 9, 2009, in a trust position as an Administrative Assistant II at the File and Mailing Office. Since the year 2008, the salary of plaintiff Feliciano Reyes was paid from funds of the Salary Incentive Program enacted under Act No. 52, until his termination on January 9, 2009. Mr. Feliciano Reyes admitted not having any personal knowledge of whether he was replaced, and if so, he does not have any personal knowledge as to the political affiliation of his replacement. Plaintiff Feliciano Reyes admitted never having any contact with any of the defendants nor heard any of the defendants making any remarks about the prior administration. Mr. Feliciano Reyes "is not aware whether the defendants know [sic] about his politi-

cal participation." *See Amended Complaint,* Docket No. 10, ¶¶ 2e, 41–51; and, *Defendants' Statement of Uncontested Facts in support of Motion for Summary Judgment,* Docket No. 99, ¶¶ 6a–6z, Docket No. 120–33 to 120–36, certified English translations.

6. Facts as to **Lina M. Gutiérrez Sandoval.**

Ms. Gutiérrez Sandoval worked at La Fortaleza from March 3, 2003 to January 9, 2009, in a trust position as an Administrative Officer in the Filing and Mail Office. During the year 2008, plaintiff became a participant of the Salary Incentive Program enacted under Act No. 52. Plaintiff worked under the new administration on January 7, 8, and 9, 2009. Plaintiff stated that she never met with any of the defendants herein nor has any personal knowledge what employees, if any, were appointed and/or promoted at La Fortaleza after the change of administration. Plaintiff also stated that she met defendant Ms. Berlingeri when she inspected the office where plaintiff Gutiérrez Sandoval worked. Lastly, plaintiff stated that she only spoke about politics with some fellow workers, to wit, Carmen, Domingo del Valle, Virginia Colón and Nora Peña. Plaintiff does not have personal knowledge of who, if any, replaced her nor heard any of the defendants made comments about her termination from employment. Ms. Gutiérrez–Sandoval "understands that codefendant Fortuño, co-defendant Vela and co-defendant Blanco had no participation in the determination of terminating her employment." *See Amended Complaint,* Docket No. 10, ¶¶ 2f, 72–81; and, *Defendants' Statement of Uncontested Facts in support of Motion for Summary Judgment,* Docket No. 99,

¶¶ 9a–9ee, Docket No. 120–46 to 120–49, certified English translations.

7. Facts as to **Lenisse Rivera Narváez.**

Plaintiff Rivera Narváez worked at La Fortaleza from September 16, 2003 to January 9, 2009, in a trust position as an Administrative Officer at the Human Resources Office, specifically at the Filing and Correspondence Division. During the year 2008, plaintiff became a participant of the Salary Incentive Program enacted under Act No. 52. Plaintiff stated that she never met with any of the defendants herein nor has any personal knowledge what employees, if any, were appointed and/or promoted at La Fortaleza after the change of administration. Plaintiff also stated that she "has no basis to think co-defendants knew about her political affiliation." Lastly, plaintiff stated that she has no personal knowledge of what was the defendants participation, if any, in his termination. *See Amended Complaint,* Docket No. 10, ¶¶ 2g, 82–92; and, *Defendants' Statement of Uncontested Facts in support of Motion for Summary Judgment,* Docket No. 99, ¶¶ 8a–8cc, Docket No. 120–42 to 120–45, certified English translations.

8. Facts as to **Diana Rodríguez Lebrón.**

Plaintiff Rodríguez Lebrón worked at La Fortaleza from March 1, 2001 to January 9, 2009, in a trust position as Executive Secretary III, IV at the Finance Division of the Administration Office, until her termination. During the year 2008, plaintiff Rodríguez Lebrón became a participant of the Salary Incentive Program enacted under Act No. 52. Plaintiff Rodríguez Lebrón stated that there were five employees working with her at the

Finance Division but only two were terminated, and she has no knowledge of what happened to the other three employees. She stated not knowing what new employees, if any, began working at La Fortaleza under the Fortuño administration. Plaintiff Rodríguez Lebrón admitted never having any contact with any of the defendants herein, nor heard any of the defendants making any disparaging remarks about the prior administration or any political remarks. Ms. Rodríguez–Lebrón stated that she "does not know how the co-defendants knew, if in anyway, her political affiliation." Moreover, plaintiff "has no personal knowledge of what was co-defendant Fortuño's participation, if any, in her termination." *See Amended Complaint,* Docket No. 10, ¶¶ 2h, 62–71; and, *Defendants' Statement of Uncontested Facts in support of Motion for Summary Judgment,* Docket No. 99, ¶¶ 4a–4ll, Docket No. 120–25 to 120–28, certified English translations.

9. Facts as to **Yaritza De Jesús López.**

Ms. De Jesús López worked at La Fortaleza from December 2, 2002 to January 9, 2009, in a trust position as an Administrative Officer (Pre–Intervention) at the Finance Office. During the year 2008, plaintiff De Jesús López became a participant of the Salary Incentive Program enacted under Act No. 52. Plaintiff stated that she only worked under the new Fortuño administration on January 7, 8 and 9, 2009. Plaintiff was terminated from her employment on January 9, 2009. Plaintiff stated that during her work under the new Fortuño administration, she never saw any political propaganda of any kind and from any political party. Plaintiff also stated that although she knew the political affiliation of ten employees within La Fortaleza, she did not share or discuss politics with other employees. Ms. De Jesús López stated that she has no personal knowledge as to whether the defendants have reviewed her personnel file. Plaintiff stated that she never met nor had any contact with any of the defendants, Fortuño, Vela, and Blanco. Plaintiff further stated that she never heard any of the defendants make disparaging remarks about the prior administration nor about her termination of employment or the employment of other employees. Lastly, plaintiff stated that "co-defendant Fortuño never made statements regarding politics and/or political matters and/or political affiliation to [her] and/or in her presence." *See Amended Complaint,* Docket No. 10, ¶¶ 2i, 93–102; and, *Defendants' Statement of Uncontested Facts in support of Motion for Summary Judgment,* Docket No. 99, ¶¶ 18a–18x, Docket No. 120–84 to 120–32, certified English translations.

10. Facts as to **Edwin Figueroa Maldonado.**

Mr. Figueroa Maldonado worked at La Fortaleza from July 22, 2002 to January 9, 2009, in a trust position as Administrative Officer (Purchaser), at the Purchase and Warehouse Office at La Fortaleza. Plaintiff worked on January 7 and 8, 2009 under the new Fortuño administration, he was given the day off on January 9, 2009, date when he was terminated. Mr. Figueroa Maldonado met defendant Ms. Berlingeri on January 7, 2009 when she visited his working area. Plaintiff stated not having any contact with any of the other defendants or "has no personal knowledge as to whether any

of the co-defendants knew his political affiliation." *See Amended Complaint,* Docket No. 10, ¶¶ 2j, 246–256; and, *Defendants' Statement of Uncontested Facts in support of Motion for Summary Judgment,* Docket No. 99, ¶¶ 5a–5x, Docket No. 120–29 to 120–32, certified English translations.

11. Facts as to **Patrick Rodríguez Javier.**

Plaintiff Rodríguez Javier worked at La Fortaleza from January 2, 2002 to January 9, 2009, in a trust position as an Administrator Assistant I (Custodian of Records) at the Human Resources Office. During the year 2008, Mr. Rodríguez Javier became a participant of the Salary Incentive Program enacted under Act No. 52. Plaintiff worked under the new Fortuño administration on January 7, 2009, and was terminated from employment on January 9, 2009. Mr. Rodríguez Javier worked at the Office of Personnel, and the personnel files were under plaintiff's custody. Plaintiff stated that he "did not see any of the defendants examining his personnel file." On the same token, plaintiff "did not see any employee that started working under the new administration after January 2, 2009 examining his personnel file." Plaintiff Rodríguez Javier stated that whenever someone requested a personnel file, "the Human Resources Director authorized him [plaintiff] and he would hand the file to the Director." Plaintiff also stated that during January 7–9, 2009, all personnel files were under his custody, and no one asked to examine any personnel files. During his work at La Fortaleza from January 7–9, 2009, plaintiff never saw any political propaganda nor has personal knowledge as to whether NPP employees were promoted at La Fortale-

za after the change in administration. Plaintiff also stated that he never had any contact with any of the defendants herein, nor that any of the defendants made any comments regarding Mr. Rodríguez Javier's political affiliation. Lastly, plaintiff stated that no one asked him about his employment details at La Fortaleza, nor is plaintiff "aware whether the co-defendants knew about his political affiliation," or had any participation in plaintiff's employment termination, or heard any comments regarding plaintiff's employment or plaintiff's as an employee. *See Amended Complaint,* Docket No. 10, ¶¶ 2k, 211–221; and, *Defendants' Statement of Uncontested Facts in support of Motion for Summary Judgment,* Docket No. 99, ¶¶ 15a–15ii, Docket No. 120–72 to 120–75, certified English translations.

12. Facts as to **Nicolle M. Mojica Sostre.**

Ms. Mojica Sostre worked at La Fortaleza from December 6, 2007 to January 9, 2009, in a trust position as an Administration Assistant I (Receptionist) at the Citizens Services Office. During the year 2008, plaintiff Mojica Sostre became a participant of the Salary Incentive Program enacted under Act No. 52. Plaintiff did not work at La Fortaleza during the first days of the new Fortuño administration. Plaintiff stated that she reported back to work on January 7, 2009, and was terminated on January 9, 2009. Plaintiff Mojica Sostre stated that "during the days between the 2008 elections and her termination," she never saw any political propaganda. Ms. Mojica Sostre further stated that she did not have any contact with any of the named defendants herein nor heard any of the defendants made disparag-

ing remarks about the members of the PDP or comments regarding the employees that were terminated at La Fortaleza. When plaintiff returned to work, she was not approached or asked by any employee of the new Fortuño administration regarding details of her employment or her political affiliation. Plaintiff Mojica Sostre further alleges that she "is not aware what participation, if any, the codefendants had in her termination," nor is she aware "whether the co-defendants knew about her political affiliation." *See Amended Complaint*, Docket No. 10, ¶¶ 21, 103–112; and, *Defendants' Statement of Uncontested Facts in support of Motion for Summary Judgment*, Docket No. 99, ¶¶ 13a–13bb, Docket No. 120–63 to 120–67,

13. Facts as to **José D. Muñiz Díaz.**

Mr. Muñiz Díaz worked at La Fortaleza from April 1, 2003 to January 9, 2009, in a trust position as Administrative Officer (Interagency Coordinator) at the Citizens Services Office. Plaintiff is married to Enilda Ramírez Pérez, who is a plaintiff in this action, as well as their conjugal partnership. Plaintiff Muñiz Díaz became a participant in the Salary Incentive Program enacted under Act No. 52. Due to an accident that plaintiff suffered at home on November 11, 2008, Mr. Muñiz Díaz was on sick leave from the date of the accident until January 9, 2009, the date when he was terminated. Plaintiff stated that he never met with any of the defendants herein nor has any personal knowledge what employees, if any, were appointed and/or promoted at La Fortaleza after the change of administration. Plaintiff also stated that he "cannot provide a particular fact to support his contention that the co-defendants knew his political affiliation." Lastly, plaintiff

stated that he has no personal knowledge of what was the defendants' participation, if any, in his termination. *See Amended Complaint*, Docket No. 10, ¶¶ 2m, 124–137; and, *Defendants' Statement of Uncontested Facts in support of Motion for Summary Judgment*, Docket No. 99, ¶¶ 7a–7jj, 120–37 to 120–41, certified English translations.

14. Facts as to **Zulma I. Díaz Torres.**

Plaintiff Díaz Torres worked at La Fortaleza from March 3, 2003 to January 9, 2009, in a trust position as In Charge of Maintenance employee. On November 17, 2003, plaintiff was transferred to the Office of Citizen Services and was reclassified as an Administrative Assistant II (Filing and distribution of correspondence). Plaintiff is married to Roberto Vélez García, plaintiff herein as well as their conjugal partnership. On February 13, 2008, plaintiff acknowledged receipt of several documents including the *Regulation for Human Resources Administration in the Trust Service* of August 31, 2007. During the year 2008, plaintiff began her participation under the Salary Incentive Program enacted under Act No. 52. Plaintiff did not work from January 1–6, 2009, she worked from January 7–9, 2009 under the new Fortuño administration. Plaintiff was terminated from her employment on January 9, 2012. During her working term under the new Fortuño administration, plaintiff never saw any political propaganda of any type in favor of the NPP at La Fortaleza. Plaintiff stated not having any personal knowledge of what NPP employees, if any, were promoted at La Fortaleza under the new Fortuño administration. Plaintiff was unable to identify the names and how many

employees worked at several offices at La Fortaleza. Plaintiff was able to identify only fourteen employees that worked at several offices at La Fortaleza, and the political affiliation of only two of the employees. Plaintiff further stated that politics was not a subject frequently discussed at the Office of Citizen Services nor she discussed political affiliations with employees of other La Fortaleza offices. Plaintiff also stated that as to the other eighteen employees, she knew the political affiliation of just one. Plaintiff added that she had no personal knowledge whether she was replaced by another person to perform her duties. Plaintiff never met or spoke to any of the defendants herein nor heard any of the defendants making any statements regarding politics, political matters or political affiliations to plaintiff or in her presence. Plaintiff stated that she never met or spoke to co-defendant Fortuño, Vela, Blanco or Berlingeri. Ms. Mercado–Ramos further stated that "co-defendant Fortuño never made statements regarding politics and/or political matters and/or political affiliation to [her] and/or in her presence." Likewise, as to co-defendants Vela, Blanco and Berlingeri. Moreover, plaintiff never heard any of the named defendants making disparage remarks about the prior administration nor heard any of the defendants make any comments addressed to her. After her termination, plaintiff never heard any of the defendants herein make any comments related to her employment termination. *See Amended Complaint,* Docket No. 10, ¶¶ 2n, 138–151; and, *Defendants' Statement of Uncontested Facts in support of Motion for Summary Judgment,* Docket No. 99,

¶¶ 20a–20dd, Docket No. 120–93 to 120–98, certified English translations.

15. Facts as to **Raúl Vázquez Colón.** Plaintiff Vázquez Colón worked at La Fortaleza from June 1, 2007 to January 9, 2009, in a trust position as Driver/Messenger at the Citizens Services Office. During the year 2008, Mr. Vázquez Colón became a participant of the Salary Incentive Program enacted under Act No. 52. Plaintiff's first day of work under the new Fortuño administration was January 5, 2009. Plaintiff Vázquez Colón was terminated on January 16, 2009. Plaintiff continued working during January 5, 2009 until the date of his termination on January 16, 2009. Plaintiff stated that he never saw any political propaganda during his working term under the new Fortuño administration. Plaintiff stated that he has no personal knowledge as to which employees were promoted or appointed after the change of administration. Plaintiff further stated that he never had any contact with any of the defendants herein, never heard any comments made by the defendants toward him or near him, never heard any comments by the defendants regarding the employees that were terminated at La Fortaleza or any comments made by the defendants regarding plaintiff's employment termination. Plaintiff further stated that he was never approached by any employee asking him about his employment at La Fortaleza. Lastly, plaintiff stated that he is "not aware whether co-defendant Fortuño knew about his political participation." *See Amended Complaint,* Docket No. 10, ¶¶ 2p, 176–188; and, *Defendants' Statement of Uncontested Facts in support of Motion for Summary Judgment,* Docket No. 99, ¶¶ 16a–

16dd, Docket No. 120–76 to 120–80, certified English translations.

16. Facts as to **Milagros Mercado Román.**

Ms. Mercado Román worked at La Fortaleza from February 1, 2002 to January 9, 2009, in a trust position as an Administrator Assistant II (filing and distribution of correspondence) at the Citizens Services Office. During the year 2008, plaintiff began her participation in the Salary Incentive Program enacted under Act No. 52. Plaintiff does not recall the exact dates that she worked under the new Fortuño administration, as she was reported sick. Plaintiff stated that he never met with any of the defendants herein nor has any personal knowledge what employees, if any, were appointed and/or promoted at La Fortaleza after the change of administration. Ms. Mercado Román stated that she "has no personal knowledge as to whether the people with whom she spoke about politics with-who all worked at the same office with her— shared her political affiliation with the co-defendants." Lastly, plaintiff Mercado–Román stated that she "has no personal knowledge of what participation, if any, the co-defendants had in her termination." *See Amended Complaint,* Docket No. 10, ¶¶ 2r, 222– 233; and, *Defendants' Statement of Uncontested Facts in support of Motion for Summary Judgment,* Docket No. 99, ¶¶ 12a–12x, Docket No. 120–58 to 120–62, certified English translations.

17. Facts as to **Yelaika Alicea Martínez.**

Plaintiff Alicea Martínez worked at La Fortaleza from February 19, 2008 to January 9, 2009, in a trust position as an Administrative Officer at the Legislative Affairs Office. Plaintiff is married to Omar Martínez Gautier, a plaintiff herein, as well as their conjugal partnership. On February 19, 2008, plaintiff received the *Regulation for Human Resources Administration in the Trust Service* of August 31, 2007. During the year 2008, plaintiff became a participant of the Salary Incentive Program enacted under Act No. 52. Plaintiff stated that she did not work from January 1 to January 6, 2009. Plaintiff worked under the new Fortuño administration from January 7–9, 2009. Plaintiff was terminated on January 9, 2009. Plaintiff also stated that during her working under the new Fortuño administration she never met, spoke or had any contact with the defendants herein nor she saw political propaganda of any type of any political party at La Fortaleza. Plaintiff Alicea Martínez stated that she had no personal knowledge as to whether any NPP employees were promoted at La Fortaleza under the new Fortuño administration nor whether any new employees were appointed at La Fortaleza under the new administration. Plaintiff admitted knowing the political affiliation of her peers that worked with her at the Legislative Affairs Office, that is, about eight employees. However, plaintiff stated that she had no knowledge of the political affiliation of other employees that worked at the other offices. Plaintiff also stated that she did not talk politics with other La Fortaleza employees nor did she shared her political affiliation with other La Fortaleza employees. Under the new Fortuño administration, plaintiff was not asked by any of the defendants or by any other La Fortaleza employee about her political affiliation. Plain-

tiff further stated that she is not aware whether the defendants had knowledge about her political affiliation nor whether there is another person performing her duties she used to perform at the Legislative Affairs Office. Plaintiff further stated that neither Fortuño, Vela, Blanco or Berlingeri made any statements regarding politics, political matters or political affiliation to Ms. Alicea Martínez in her presence. Plaintiff stated that she is not aware of what participation, if any, the defendants herein had in her employment termination nor heard any of the defendants made comments addressed to her or heard any of the defendants making disparaging remarks related to the prior administration. *See Amended Complaint,* Docket No. 10, ¶¶ 2s, 162–175; and, *Defendants' Statement of Uncontested Facts in support of Motion for Summary Judgment,* Docket No. 99, ¶ 19a–19dd, Docket No. 120–89 to 120–92, certified English translations.

18. Facts as to **Daphne M. Torres Crespo.**

Ms. Torres Crespo worked at La Fortaleza from December 1, 2003 to January 9, 2009, in a trust position as an Administrative Officer at the Legislative Affairs Office. On July 1, 2008, Ms. Torres Crespo became a participant in the Salary Incentive Program enacted under Act No. 52. Plaintiff worked under the new Fortuño administration from January 7, 8 and 9, 2009, when she was terminated. Ms. Torres Crespo did not have any contact with the defendants herein nor can she state the political affiliation of the employees that worked at La Fortaleza except two that worked in the same office. The only time that plaintiff spoke with the defendant Ms. Ber-

lingeri was when she "came to inspect the premises where she [plaintiff Torres Crespo] worked and she introduce herself. There was no other contact between them." Plaintiff Torres Crespo "never heard any of the Co-defendants made disparaging remarks about the prior administration nor political remarks." Plaintiff Torres Crespo "admitted that co-defendants did not have knowledge of her political participation nor of her affiliation to the PDP." *See Amended Complaint,* Docket No. 10, ¶¶ 2t, 201–210; and, *Defendants' Statement of Uncontested Facts in support of Motion for Summary Judgment,* Docket No. 99, ¶¶ 3a–3jj, Docket No. 120–20 to 120–24, certified English translations.

19. Facts as to **Brenda I. Fernández Mangual.**

Ms. Fernández Mangual worked at La Fortaleza from January 18, 2005 to January 9, 2009, in a trust position as Administration Assistant II at the Legislative Affairs Office. She is married to Edgar Acevedo Ríos, and her conjugal partnership is a party in this action. During the year 2008, plaintiff Fernández Mangual commenced her participation in the Salary Incentive Program enacted under Act No. 52. Ms. Fernández Mangual only worked three days under the new Fortuño administration, that is, January 7, 8, and 9, 2009, when she was terminated. Plaintiff Fernández Mangual stated that she did not know the political affiliation of most of the 300 employees that worked at La Fortaleza. She also stated that none of the defendants named in the instant action had any contact with her nor asked her, at any time, what her political affiliation was. Finally, Ms. Fernández Mangual stated that none of

the defendants herein "have knowledge of her political participation nor of her affiliation to the PDP." *See Amended Complaint,* Docket No. 10, ¶¶ 2u, 234–245; and, *Defendants' Statement of Uncontested Facts in support of Motion for Summary Judgment,* Docket No. 99, ¶¶ 2a–2mm, Docket No. 120–15 to 120–19, certified English translations.

20. Facts as to **Luis A. Ortiz Rodríguez.**

Mr. Ortiz Rodríguez worked at La Fortaleza from May 16, 2007 to January 9, 2009, in a trust position as an Information System Analyst. Plaintiff is married to Deisy Gutiérrez, who is a plaintiff in this action, as well as their conjugal partnership. During the year 2008, Mr. Ortiz Rodríguez became a participant in the salary Incentive Program enacted under Act No. 52. Plaintiff worked under the new administration on January 8–9, 2009, however, he is uncertain whether he worked from January 2–7, 2009. Mr. Ortiz Rodríguez stated that he never shared his political affiliation with his co-workers nor he had any personal knowledge of his fellow workers' political affiliation, except for two plaintiffs herein. Plaintiff never saw any political propaganda at La Fortaleza. Plaintiff stated that he has no personal knowledge of who, if any, replaced him. Lastly, plaintiff stated that he never had any contact with any of the defendants herein nor heard the defendants made any disparaging remarks about the prior administration, nor "is aware whether codefendant Fortuño knew about his political participation." *See Amended Complaint,* Docket No. 10, ¶¶ 2v, 257–268; and, *Defendants' Statement of Uncontested Facts in support of Motion for Summary Judgment,* Docket No. 99, ¶¶ 10a–10cc, Docket No. 120–50 to 120–53, certified English translations.

For easy reference, active plaintiffs may be divided in three groups, to wit:

(i) Plaintiffs who openly admitted that Fortuño, Vela, Blanco nor Berlingeri knew their political affiliation:

Lydia Alejandrino Cruz (3)

Rosa N. Rivera Hernández (4)

Héctor J. Feliciano Reyes (5)

Lenisse Rivera Narváez (7)

Diana Rodríguez Lebrón (8)

Edwin Figueroa Maldonado (10)

Patrick Rodríguez Javier (11)

Nicolle M. Mojica Sostre (12)

José D. Muñiz Díaz (13)

Yelaika Alicea Martínez (17)

Daphne M. Torres Crespo (18)

Brenda I. Fernández Mangual (19)

(ii) Plaintiffs who had no personal knowledge whether Fortuño, Vela, Blanco or Berlingeri knew their political affiliation, but who could not admit that indeed Fortuño, Vela, Blanco or Berlingeri did not know their political affiliation. In a nutshell, plaintiffs who had no personal knowledge or would not admit as to one thing or the other.

Zulma I. Díaz Torres (14)

Milagros Mercado Román (16)

(iii) Plaintiffs who had no personal knowledge as to whether some of the defendants knew about their political affiliation.

Nilda Báez Rodríguez (2)

Lina M. Gutiérrez Sandoval (6)

Yaritza De Jesús López (9)

Raúl Vázquez Colón (15)

Luis A. Ortiz Rodríguez (20)

## Applicable Law and Discussion

### A. *The Motion for Summary Judgment Standard.*

Generally, "[s]ummary judgment is proper where 'the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c)." *Richardson v. Friendly Ice Cream Corporation*, 594 F.3d 69, 74 (1st Cir.2010). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 324–325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Thompson v. Coca–Cola, Co.*, 522 F.3d 168, 175 (1st Cir.2008); *Rodríguez–Rivera, et al. v. Federico Trilla Regional Hospital of Carolina, et al.*, 532 F.3d 28, 30 (1st Cir.2008). "The object of summary judgment is 'to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.'" *Dávila v. Corporación De Puerto Rico Para La Difusión Pública*, 498 F.3d 9, 12 (1st Cir.2007), citing from *Acosta v. Ames Dep't Stores, Inc.*, 386 F.3d 5, 7 (1st Cir.2004) (quoting *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir.1992)). In *Dávila*, 498 F.3d at 12, the Court held:

> For this purpose, an issue is genuine if "a reasonable jury could resolve the point in favor of the nonmoving party." *Suarez v. Pueblo Int'l, Inc.*, 229 F.3d 49, 53 (1st Cir.2000). By like token, a fact is material if it has the potential to determine the outcome of the litigation. *See Calvi v. Knox County*, 470 F.3d 422, 426 (1st Cir.2006). Where, as here, the nonmovant has the burden of proof and the evidence on one or more of the critical issues in the case "is ... not significantly probative, summary judgment may be granted." *Acosta*, 386 F.3d at 8 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

When reviewing *de novo*, the court "must scrutinize the evidence in the light most agreeable to the nonmoving party, giving that party the benefit of any and all reasonable inferences." *Noviello v. City of Boston*, 398 F.3d 76, 84 (1st Cir.2005), citing *Cox v. Hainey*, 391 F.3d 25, 27 (1st Cir.2004). *See also Richardson v. Friendly Ice Cream Corporation*, 594 F.3d at 74. "[T]he nonmovant bears 'the burden of producing specific facts sufficient to deflect the swing of the summary judgment scythe.'" *Noviello*, 398 F.3d at 84, citing *Mulvihill v. Top–Flite Golf Co.*, 335 F.3d 15, 19 (1st Cir.2003). *See also, Dávila*, 498 F.3d 9. "Those facts, typically set forth in affidavits, depositions, and the like, must have evidentiary value; as a rule, '[e]vidence that is inadmissible at trial, such as, inadmissible hearsay, may not be considered on summary judgment.'" *Noviello*, 398 F.3d at 84, citing *Vázquez v. López–Rosario*, 134 F.3d 28, 33 (1st Cir.1998); *accord Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir.1990). "The evidence presented by the nonmoving party may not be 'conclusory allegations, improbable inferences, [or] unsupported speculation.'" *Torres–Negrón v. Merck & Company, Inc., et al.*, 488 F.3d 34, 39 (1st Cir.2007), citing *Medina–Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990).

Lastly, whether a motion is formally opposed or unopposed, the Court is still obligated to resolve the motion on the merits. *See Cordi–Allen v. Halloran*, 470 F.3d 25, 28 (1st Cir.2006) (noting that a district court is bound to review an unopposed motion for summary judgment on the merits). *See also Aguiar–Carrasquillo v. Agosto–Alicea*, 445 F.3d 19, 25 (1st Cir.2006); *Mullen, et al. v. St. Paul Fire and Marine Insurance Company*, 972 F.2d 446, 452 (1st Cir.1992); *López, et al.*

*v. Corporación Azucarera de Puerto Rico,* 938 F.2d 1510, 1516–1517 (1st Cir.1991); *Alvarado–Morales, et al. v. Digital Equipment Corp., et al.,* 843 F.2d 613, 615–616 (1st Cir.1988), standing for the proposition that an unopposed motion for summary judgment has to undergo the same scrutiny on the merits as a motion for summary judgment that has been duly opposed. The fact that the Court may grant the summary judgment should not be interpreted as a sanction for failure to oppose the summary judgment request. Based on these premises, the Court proceeds with the analysis.

### B. *The Political Discrimination Standard.*

Reference is made to *Méndez–Aponte v. Bonilla, et al.,* 645 F.3d 60, 64–65 (1st Cir.2011), where the United States Court of Appeals for the First Circuit (hereinafter the "First Circuit") set forth the test to establish political discrimination claim under 42 U.S.C. § 1983:

> The First Amendment protects public employees from adverse action due to their political affiliation, unless political affiliation is an appropriate requirement for the position. *See Branti v. Finkel,* 445 U.S. 507, 518, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Ocasio–Hernández v. Fortuño–Burset,* 640 F.3d 1, 13 (1st Cir.2011). A plaintiff seeking to establish a political discrimination claim under 42 U.S.C. § 1983 must establish four elements: "(1) that the plaintiff and defendant have opposing political affiliations, (2) that the defendant is aware of the plaintiff's affiliation, (3) that an adverse employment action occurred, and (4) that political affiliation was a substantial or motivating factor for the adverse employment action." *Ocasio–Hernández,* 640 F.3d at 13 (internal quotation marks omitted).

The question of whether political affiliation is an appropriate basis for dismissal is a legal one for the court. *Uphoff Figueroa v. Alejandro,* 597 F.3d 423, 429 (1st Cir.2010); *Hadfield v. McDonough,* 407 F.3d 11, 15 (1st Cir.2005). This circuit has typically conducted a two-part analysis to make this determination. *See Hadfield,* 407 F.3d at 16; *Duriex–Gauthier v. López–Nieves,* 274 F.3d 4, 9 (1st Cir.2001). We ask (1) "whether the governmental unit decides 'issues where there is room for political disagreement on goals or their implementation,'" *Ruiz–Casillas v. Camacho–Morales,* 415 F.3d 127, 132 (1st Cir.2005) (quoting *Jiménez Fuentes v. Torres Gaztambide,* 807 F.2d 236, 241–42 (1st Cir.1986) (en banc)), and (2) whether "the specific responsibilities of the position resemble those of a policymaker or other officeholder whose functions are such that party affiliation is an appropriate criterion for holding the post," *Hadfield,* 407 F.3d at 16. We have upheld political dismissals of mid- or upper-level employees where the employee "merely represented the agency's policy positions to other entities or to the public or where important personnel functions were part of the portfolio." *Flynn v. City of Boston,* 140 F.3d 42, 45 (1st Cir.1998).

In *Rojas–Velázquez v. Figueroa–Sancha,* 676 F.3d 206, 210–211 (1st Cir. 2012), the Court held that the First Amendment does not protect "against any and all adverse employment actions." "The prophylaxis of the First Amendment operates to shield public employees from adverse employment actions only to the extent that those actions result from their engagement in constitutionally protected activities." *Id.* Hence, "[i]t follows that in order to make out a section 1983 claim under a political discrimination theory, a public employee must show that 'his con-

duct was constitutionally protected, and that this conduct was a 'substantial factor'—or . . . a "motivating factor" with respect to the negative employment decision.' " *Id.* The Court further stated citing from *Carrasquillo v. Puerto Rico ex rel. Justice Department,* 494 F.3d 1, 4 (1st Cir.2007), "[t]o prevail on a claim of political discrimination, a public employee must at a minimum show that she engaged in constitutionally—protected conduct and that this conduct was a substantial factor in the adverse employment decision."

■ In the instant case, plaintiffs have to show four factors to establish their political discrimination claim, to wit: (a) that plaintiffs and defendants have "opposing political affiliations," (b) the defendants are aware of the plaintiffs' affiliation; (c) "an adverse employment action occurred;" and, (d) the "political affiliation was a substantial or motivating factor for the adverse employment action." *See Méndez–Aponte,* 645 F.3d at 64.

After a thorough, careful and detailed review of the grounds provided by the twenty-two plaintiffs to support their claims on political discrimination, the Court is forced to conclude that based on the evidence that is part of the record, plaintiffs have not established a political discrimination claim, simply because most of the plaintiffs were consistent in their depositions and interrogatories, when they answered that they did not have personal knowledge as to whether the defendants knew their political affiliation; (as to all the ones that made a blanket acceptance); others stated that certain defendants did not know plaintiffs' political affiliation; those who do not accept that the defendants knew their affiliation failed to provide any statement that any of the defendants knew plaintiffs' political affiliation, and how they knew. *See Infra* 110–11. Further, and most critical, plaintiffs failed

to identify that the defendants knew their political affiliation to the PPD.

Plaintiffs cannot in any way rely on the fact that all of them were hired during the administration of the former PPD governors, to wit, Sila Calderón and Aníbal Acevedo Vilá, to create an inference that they were all PPD members. This assumption would presuppose that the former governors, Calderón and Vilá, would hire exclusively PPD affiliated employees to provide the benefits of this social law to exclusive members of the PPD under the Salary Incentive Program enacted under Act No. 52, and prior thereto, under similar social benefits law. A clear violation of the law.

Hence, plaintiffs have failed to meet the requirements of the test set forth above to establish a political discrimination claim under the First Amendment and 42 U.S.C. § 1983. As to the factor of the "adverse employment action" taken by the new Fortuño administration, plaintiffs' opposition to summary judgment is silent as to the provisions of the Salary Incentive Program enacted under Act No. 52, as well as the uncertainty of plaintiffs' employment after the expiration of the Salary Incentive Program on December 31, 2008.

In sum, the Court finds that plaintiffs failed to meet the threshold of all the four factors to establish a political discrimination claim under the First Amendment and 42 U.S.C. § 1983. *See Méndez–Aponte,* 645 F.3d at 64. Lastly, the Court finds that all plaintiffs were in trust positions regardless of the fact that they were non-policy making employees. According to the record, all plaintiffs were hired as trust employees to work at La Fortaleza, including any of the adjacent building that comprised La Fortaleza compound. During the year 2008, plaintiffs' trust employees' status remained the same. The only difference is that plaintiffs' salaries were

funded by the Salary Incentive Program enacted under Act No. 52, which expired on December 31, 2008.[5]

The record shows, however, that the defendants did not lay off at least two employees that work in the private quarters of the Governor's residence, for they were highly recommended by the former governor and his wife, to wit, Mr. César Batiné, who is affiliated to the PPD, and worked at La Fortaleza prior to the Fortuño Administration, as well as Ms. Teresa Vargas, who is also a PPD member.[6] Thus, plaintiffs failed once again to establish that the defendants, particularly Governor Fortuño and Ms. Berlingeri, capriciously and carelessly laid off non-policy making trust employees simply because they belonged to the opposing party, the PPD. *See* Docket No. 99, ¶ 1uu, ¶ 1ddd, ¶ 1ooo.

C. *The Governor's Executive Orders, and the Salary Incentive Program v. Plaintiffs' political discrimination claims under 42 U.S.C. § 1983, First Amendment and Due Process.*

The Court finds necessary to examine the legal reasons that triggered plaintiffs' lay off, and which happens to be ignored by plaintiffs in their pleadings. As stated above, due to the critical economic situation of Puerto Rico at the beginning of the year 2009 and the lack of economic resources, Governor Fortuño declared a state of fiscal emergency on January 8, 2009 by Executive Order No. 2009–001, *Executive Order of the Governor of the Commonwealth of Puerto Rico to Declare a State of Fiscal Emergency and to Implement Initial Measures of Fiscal Control and Economic Reconstruction* ("Executive Order No. 2009–001"). *See* Docket No. 99–5. The Executive Order No. 2009–001 provides severe measures, amongst them: (a) to cut governmental spending: (b) to freeze all vacant positions; (c) a prohibition to create new positions; (d) the agencies must cut operational costs; and (e) the elimination of trust service positions, "[a]s of this date of this Executive Order, every agency must eliminate thirty percent (30%) of all authorized trust service positions," with the exception of essential positions, as defined in the Executive Order No. 2009–001, Sections 6th and 7th.

On January 9, 2009, Governor Fortuño enacted the Executive Order No. 2009–002, appointing Ms. Berlingeri Marín as the Administrator of the Office of the Governor of Puerto Rico, pursuant to the provisions of Act No. 104, and "authorized [Mrs. Berlingeri] to take any necessary actions and sign any necessary official documents related to the administration of the Office of the Governor. *See* Docket No. 99–10. The Executive Order No. 2009–002 became effective as of January 3, 2009. Hence, Ms. Berlingeri's administrative duties were also framed under the man-

---

**5.** 29 L.P.R.A. § 711c(c) provides in its relevant part:

> In view of the nature and origin of the funds, their uses and distribution shall be consistent with the procedural directives of the Federal Unemployment Tax Act. The moneys of the Fund shall be used for the creation of an employment and training opportunities program in the public and private sectors as provided by the Secretary through regulations. The program established shall include persons of advanced age, as said term is defined in Act No. 86 of July 11, 1988, and shall provide for their training and re-training. **Said moneys may also be used to maintain existing jobs, extend their duration, modify compensation as transitory remedial measure in situations that may involve possible job loss, when it is deemed justifiable in the Secretary's judgment....** (Emphasis ours).

**6.** The record is silent as to whether Ms. Teresa Vargas,' and Mr. Batiné's salaries were funded by the Salary Incentive Program.

date of the Executive Order No. 2009–001. In sum, Ms. Berlingeri nor any other head of agency had the authorization to renew any employment contracts, which funds stemmed from a program, such as, the Salary Incentive Program, which expired on December 31, 2008.

In *Rodríguez–Sánchez v. Municipality of Santa Isabel,* 658 F.3d 125, 132 (1st Cir.2011), the Court held:

> A triable claim of political discrimination under 42 U.S.C. § 1983 requires, among other things, evidence that political affiliation was a substantial or motivating factor in the conduct being challenged. *See Del Toro Pacheco v. Pereira,* 633 F.3d 57, 63 (1st Cir.2011). Even if a plaintiff makes a prima facie showing that the government acted from politically discriminatory motives, a defendant may avoid liability by proving that he or she inevitably would have taken the same action without regard to politics. *See generally Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). "Thus, even if the defendant's actions were motivated in part by the plaintiff's protected conduct, the defendant can still prevail if he or she can show that the protected conduct was not the 'but-for' cause of the adverse action." *Rodríguez–García v. Miranda–Marín,* 610 F.3d 756, 767 (1st Cir.2010). **More specifically, "when a new administration decides to reorganize or take other cost-cutting measures after winning an election and thereby eliminates the jobs of the plaintiffs, the defendants' decision will be upheld if they can demonstrate that the reorganization would have occurred regardless of the political affiliation of the plaintiffs."** *Acevedo Cordero v. Cordero Santiago,* 764 F.Supp. 702, 709 (D.P.R.1991). (Emphasis ours).

In *Rodríguez–Sánchez,* the Court concluded that the plaintiffs "ha[ve] failed in their burden of producing evidence sufficient to show that the termination decisions were politically motivated." Moreover, "[o]ur determination in the due process analysis that the reorganization [of the government or the municipality] was bona fide, and thus not pretextual, necessarily means that the defendants have satisfied their burden of showing that Ordinance 28 [Executive Order No. 2009–001] would have been implemented irrespective of the political affiliation of those who were terminated." 658 F.3d at 132–133. Plaintiffs herein absolutely failed to even broach this subject matter.

In the instant case, plaintiffs termination was unavoidable on three grounds: (a) the source of the funding of their salaries, that is, the Salary Incentive Program, had expired on December 31, 2008, and there were no identifiable funds available to continue funding plaintiffs' salaries; (b) the provisions of the Executive Order No. 2009–001, specifically prohibited the creation of new positions, including new contracts, based on the declaration of a state of fiscal emergency of the Commonwealth of Puerto Rico, and the urgency of reorganize the governmental operations to meet the new fiscal challenges; and, (c) the Executive Order No. 2009–0001 specifically mandates the elimination of 30% of all authorized trust service positions of all agencies.

Further, none of the plaintiffs were career employees prior to being granted the benefits of the Salary Incentive Program enacted under Act No. 52. Pursuant to the aforecited provisions of Employment Opportunities Development Fund, 29 L.P.R.A. § 711c(c), from which the Salary Incentive Program was enacted, the "moneys may also be used to maintain existing jobs, extend their duration, modify com-

pensation as transitory remedial measure in situations that may involve possible job loss...." Hence, the provisions of Act No. 52, specifically excludes career employees.

## Conclusion

In view of the foregoing, the defendants' *Motion for Summary Judgment*, Docket No. 98, is granted. The following documents are stricken from the record: (a) *Plaintiffs' Objections To Defendants' Statement Of Facts*; (b) *Plaintiffs' Opposition To Defendants' Motion For Summary Judgment*, and (c) *Plaintiffs' Motion In Response To Defendants' "Motion To Strike" At Docket No. 116*, Docket entries No. 111, 112 and 136. All federal claims are dismissed with prejudice, and all state law claims are dismissed without prejudice. Judgment is to be entered accordingly.

IT IS SO ORDERED.